IN RE APPLICATION NO. 5218, WATER DIVISION NO. 2-C, AINSWORTH IRRIGATION DISTRICT.

AINSWORTH IRRIGATION DISTRICT, APPELLEE, V. JEROME BEJOT ET AL., APPELLANTS.

102 N. W. 2d 416

Filed April 8, 1960. No. 34747.

*Quigley & Quigley* and *Mason, Knudsen, Dickeson & Berkheimer,* for appellants.

*William C. Smith, Jr., Bert L. Overcash, Allen L. Overcash,* and *Woods, Aitken & Aitken,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This appeal involves an application of Ainsworth Irrigation District, hereinafter called plaintiff, seeking an appropriation of water from the Snake River for irrigation purposes. Such "Application No. 5218, Water Division No. 2-C" was filed with the Department of Roads and Irrigation, now the Department of Water Resources, on March 26, 1953, by one Vern P. Lindholm, as authorized agent for the benefit of plaintiff as named therein, in order to preserve a priority date for plaintiff pending entire and proper completion of its organization on

August 10, 1953, after which time Vern P. Lindholm admittedly assigned said application to plaintiff. In form and substance the application conformed with the requirements of section 46-233, R. R. S. 1943, now section 46-233, R. S. Supp., 1959, as amended and effective September 20, 1957. For approval and confirmation of plaintiff's organization as an irrigation district and its contract with the United States, see Ainsworth Irr. Dist. v. Harms, *ante* p. 228, 102 N. W. 2d 429.

On March 30, 1955, five named objectors, only one of whom appears as objector in this proceeding but who were all represented by the same counsel as appear herein, filed a motion with the department requesting it to withdraw "Application No. 5218, Water Division No. 2-C. Ainsworth Irrigation District * * * filed * * * on March 26, 1953," and return it to said district because it contained a request "for a trans-watershed diversion of the waters of the Snake River * * * beyond the authority and jurisdiction of the Department of Roads and Irrigation * * * to grant * * * and that in the event the request and motion is denied that the above-named parties be granted sufficient time to file objections to matters raised in the application for the purpose of making up issues to be determined by evidence adduced at a hearing on the merits of the application." After notice, an informal conference was held with relation thereto on April 18, 1955, in the office of the department by objectors' counsel, several other attorneys, interested parties, and the State Engineer. Thereafter, on May 3, 1955, the State Engineer wrote objectors' counsel, saying in part: "As you know, Application 5218 was filed by the Ainsworth Irrigation District on March 26, 1953, and it has been pending since that date. This application is for a permit to appropriate the waters of the State of Nebraska for the irrigation of the lands of the district by means of a canal and distribution system to be constructed by the U. S. Bureau of Reclamation when funds are appropriated for that purpose.

"We do not feel that it would be proper procedure for this department to withdraw Application 5218 from our files and return it to the Ainsworth Irrigation District at this time, and we are not complying with the request to do so in Paragraph A of the motion and request.

"The parties named in your motion and request will be given notice before any action is taken on Application 5218 and ample time for filing objections will be granted as requested in Paragraph C of the motion and request."

In that connection, section 46-238, R. S. Supp., 1959, effective September 20, 1957, provides in part: "Any application for an appropriative right which is deficient by reason of past failure to comply with any of the requirements of sections 46-233 and 46-238 for the perfection of an appropriative right, which application has not been dismissed or denied, is also hereby ratified and confirmed; unless, within one year from September 20, 1957, a petition * * * to forfeit, cancel or otherwise invalidate such an application for an appropriative right, shall have been filed with the department by a person affected adversely thereby." Admittedly, no such petition was ever so filed by defendants herein or any of them with the Department of Water Resources, and no question was raised regarding validity of plaintiff's application except upon the ground aforesaid until July 7, 1959.

On July 7, 1959, objections to plaintiff's application were filed by nine named objectors, hereinafter called defendants. One of such objections was that plaintiff's application was null and void because it was filed in the name of the Ainsworth Irrigation District before its organization was completed. We believe that this is the proper place to dispose of that objection. In that connection, plaintiff has at all times regarded and treated Application No. 5218 as its own, and has at all times accepted the benefits and obligations thereof, as it had a right to do. See, 1 Fletcher, Cyclopedia Corporations

(Perm. Ed.), § 207, p. 681; 13 Am. Jur., Corporations, § 102, p. 246, § 103, p. 247, citing numerous authorities from this and other jurisdictions. From the time of filing the application on March 26, 1953, until July 7, 1959, defendants treated the application as that of plaintiff, except to claim on the latter date that it was invalid only because of alleged "trans-watershed diversion." Plaintiff and the department as well were thus led by defendants to believe and assume, until July 7, 1959, that the application was that of plaintiff, and that defendants claimed invalidity only because of alleged "trans-watershed diversion." Also, defendants had ample notice and opportunity to file a petition, as provided by section 46-238, R. S. Supp., 1959, and thus attack validity of the application, but they admittedly failed to do so. We conclude that they are not now in any position to claim that the application was void because it was filed in the name of the Ainsworth Irrigation District before its organization had been completed.

As recently as Chicago, B. & Q. R. R. Co. v. State Board of Equalization & Assessment, *ante* p. 77, 101 N. W. 2d 856, citing numerous authorities, this court held: "A litigant who knowingly and deliberately assumes a particular position in a judicial proceeding is generally estopped to take a position inconsistent therewith to the prejudice of an adverse party."

In defendants' objections, one defendant, Harold Harms, simply alleged that he was the owner in possession of described lands in Cherry County. In that connection, the record discloses that such lands do not abut on the Snake River and are outside the irrigation district, but will be crossed in part by plaintiff's proposed irrigation canal. Another defendant, Garret O. Swanson, simply alleged that he was the owner in possession of described lands which abut upon the Snake River. In that respect, the record discloses that such lands are outside the irrigation district, but that 40 acres owned by him abut upon the Snake River some

distance above plaintiff's proposed dam and reservoir area, and that he has a one-fourth interest in other lands nearby. The remaining seven defendants alleged that they were owners in possession of described lands which total only 1,213 acres, representing 3.3 percent of the total area within the district. Of course, they would ordinarily be subject to the burden of water and the plaintiff's contract with the United States, appearing in this record and referred to in Ainsworth Irr. Dist. v. Harms, *ante* p. 228.

In that connection, plaintiff argued that none of defendants had any right to appear and object to plaintiff's application or appeal to this court, because they were not legally affected and had no legal interest in this proceeding for an appropriation. At least six defendants, who admittedly owned land within the district, we believe would be legally affected by the appropriation and had a legal interest in this in rem proceeding which plaintiff would be required to prosecute and establish before the Department of Water Resources to obtain an appropriation in any event, whether or not anyone objected. See, Ainsworth Irr. Dist. v. Harms, *ante* p. 228. We conclude that such six defendants had a right to object to plaintiff's application and to appeal to this court. However, whether or not defendants Harms and Swanson would be legally affected, or had a legal interest which would entitle them to object to plaintiff's application and appeal to this court, we need not decide in this proceeding in order to dispose of the case under the circumstances presented herein.

As far as important here, defendants' other objections were in substance as follows: (1) That the Department of Water Resources was without authority to approve plaintiff's application because the proposal involved the unlawful diversion of water from the Snake River and transportation thereof in a canal across the watersheds of Gordon Creek and several other named

creeks before it reaches the lands in the irrigation district from whence the unused waters would run into the Niobrara River, in violation of section 46-265, R. R. S. 1943; (2) that the proposed diversion of water was unlawful under the provisions of section 46-206, R. R. S. 1943, because the width of the Snake River at point of diversion of plaintiff's canal is less than 100 feet; and (3) that approval of plaintiff's application would be detrimental to the public welfare and deprive defendants of equal protection of the laws and of property without due process of law. Defendants prayed for a denial and dismissal of plaintiff's application.

On July 10, 1959, plaintiff filed an answer which traversed defendants' objections; and prayed for a denial of said objections and for granting of plaintiff's application. Defendants' reply, filed July 15, 1959, was in the nature of a general denial. A full and final hearing was held by the Director of Water Resources from July 21 to July 23, 1959, whereat the parties adduced evidence and thereafter filed briefs. Subsequently, on September 4, 1959, orders were rendered by the department overruling defendants' objections and approving plaintiff's application.

. The order overruling defendants' objections found and adjudged substantially as follows: (1) That if Application No. 5218 was deficient when filed by reason of nonexistence of Ainsworth Irrigation District, it was validated by Vern P. Lindholm's assignment to plaintiff, and that the application became ratified and confirmed under the provisions of section 46-238, R. R. S. 1943 (now section 46-238, R. S. Supp., 1959); (2) that because waters of the Snake River discharged into the Niobrara River, and substantial portions thereof will continue to do so when diversions are made for the proposed Ainsworth project, and the Niobrara River is essentially the same stream as the Snake River, and also because both streams are a part of the same river basin, the diversion as proposed by plaintiff's application

will not be a violation of sections 46-206 and 46-265, R. R. S. 1943, as interpreted by the Supreme Court of this state, and as they have been administratively interpreted by the department and its predecessors; and (3) that the granting of a permit to use waters of the Snake River under plaintiff's application will not be detrimental to the public welfare.

The order approving plaintiff's application and certifying approval thereof by the department, as provided in section 46-235,· R. R. S. 1943, was made subject to certain limitations and conditions. As far as important here, they were in substance as follows: That the source of the appropriation was the Snake River; that the water appropriated should be used for irrigation purposes only; that priority date of the appropriation was March 26, 1953; that on or before March 4, 1960, plaintiff should file a map in the office of the department as provided by section 46-237, R. R. S. 1943, and in accordance with rules and regulations of the department; provided that work of construction should begin on or before March 4, 1960, and be prosecuted to completion as provided in section 46-238, R. R. S. 1943 (now section 46-238, R. S. Supp., 1959), unless temporarily interrupted by some unavoidable and natural cause; fixed a time for completing work of construction as November 30, 1970; limited the amount of plaintiff's appropriation to one-seventieth of a cubic foot of water per second of time for each acre of land to which water is actually and usefully applied on or before October 31, 1975; provided that the department may require installation of a measuring device as provided by section 46-256, R. R. S. 1943; provided that the rights of owners of land bordering on streams in Water Division No. 2-C to use water for domestic purposes, including the watering of livestock, must be respected; provided that the prior rights of all persons who, by compliance with the laws of Nebraska, have acquired the right to use the waters of the natural streams of the state, must not be

interfered with by the use of water under this permit; recited that the record shows that there are periods during some years when the supply of water in the Niobrara River Basin is not sufficient to meet the requirements of all those having appropriations for its use, therefore applicant is given notice that it may be denied the use of water during times of scarcity; and that said "Section 6, Article XV, Constitution of Nebraska, 1920, and Sections 70-668 and 70-669, Reissue Revised Statutes of Nebraska, 1943, govern the use of water, and provide that no inferior right to the use of the waters of this State shall be acquired by a superior right without just compensation therefor to the inferior user with prior rights." Thereafter defendants' motion for rehearing was overruled and they appealed to this court, assigning in substance: (1) That the findings and determination of the department were contrary to the application, evidence, and law; and (2) that defendants were denied due process and equal protection of the law. We do not sustain defendants' assignments.

With regard to defendants' last assignment, they make no contention that the irrigation statutes and laws deny defendants due process or equal protection. However, citing and quoting from 12 Am. Jur., Constitutional Law, § 566, p. 257, defendants contend that the department in its administration of the law has made its own law by administrative fiat, and thereby discriminated against defendants and denied them equal protection of the law by refusing to give them protection on a parity with that afforded objectors in Osterman v. Central Nebraska Public Power & Irr. Dist., 131 Neb. 356, 268 N. W. 334, upon which defendants primarily rely.

In that opinion, this court concluded that under the established policy of this state, water for irrigation purposes taken from the Platte River or its tributaries could not be lawfully diverted over and beyond the southern watershed of that stream and applied to lands

situated beyond and without the basin of the Platte River. In other words, the primary issue decided in that case was that "waters of the Platte river" could not be lawfully transported "through and across the divide. or watershed which separates the Platte river system from the basins of the Blue and Republican rivers (both tributaries of the Kansas river and constituting a part of its system), and therewith irrigate lands situated wholly outside the Platte river valley and beyond the watershed thereof." As hereinafter observed, we have no comparable situation in the case at bar.

Before proceeding further, we point out that defendants and their counsel as well had timely notice and knowledge that plaintiff's application had been filed with the department, together with timely notice and ample opportunity to file a petition attacking its validity within 1 year from September 20, 1957, but they admittedly failed to do so as required by section 46-238, R. S. Supp., 1959. Also, as shown by the opinion in Ainsworth Irr. Dist. v. Harms, *ante* p. 228, defendants and their counsel as well had timely notice and ample opportunity to defend and did defend in that special in rem proceeding and appeal therefrom to this court. Further, defendants and their counsel as well had timely notice and ample opportunity to defend in the case at bar, and they did so. No contention is made otherwise.

We point out also that in this proceeding defendants called but one witness who was a licensed professional consulting engineer in Lincoln. None of defendants testified at the hearing. There is no evidence that defendant Swanson, some of whose land admittedly abutted on the Snake River some distance above plaintiff's proposed dam and reservoir area, ever used any water from or had any appropriation of water from the Snake River, and if he did, every right which he had, if any, was protected by the department's final orders and the law. The same is true of defendant Harms, a part of whose land would be crossed by plaintiff's pro-

posed canal. As said in Crawford Co. v. Hathaway, 67 Neb. 325, 93 N. W. 781, 108 Am. S. R. 647, 60 L. R. A. 889, quoted with approval in Nebraska Mid-State Reclamation District v. Hall County, 152 Neb. 410, 41 N. W. 2d 397: "While there are some questions affecting property rights which grow out of the administration of the law by the state board of irrigation (now the Department of Water Resources), and in which are involved matters in dispute calling for action of a quasi-judicial character, yet as to all these ample provisions are made for recourse to the courts." We conclude that under the circumstances presented in this case, defendants could not and have not been deprived of any constitutional rights as argued by them.

In Nebraska Mid-State Reclamation District v. Hall County, *supra*, we said: "Article XV, section 4, Constitution of Nebraska, provides: 'The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want.' A natural want is one absolutely necessary to human existence. Therefore, its legislative conservation and control for such uses is a public purpose." In that connection, Article XV, section 5, Constitution of Nebraska, provides: "The use of the water of every natural stream within the State of Nebraska is hereby dedicated to the people of the state for beneficial purposes, subject to the provisions of the following section." Such "following section" is section 6, which provides: "The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied except when such denial is demanded by the public interest. Priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any natural stream are not sufficient for the use of all those desiring to use the same, those using the water for domestic purposes shall have preference over those claiming it for any other purpose, and those using the

water for agricultural purposes shall have the prefer-
ence over those using the same for manufacturing pur-
poses. Provided, no inferior right to the use of the
waters of this state shall be acquired by a superior
right without just compensation therefor to the in-
ferior user."

This court has concluded in cases comparable with
that at bar that on an appeal to this court from an
order of the Department of Water Resources, the pri-
mary questions to be determined are generally whether
such department acted within the scope of its author-
ity and whether its findings and order complained of
are supported by competent evidence or are unreason-
able and arbitrary. See State ex rel. Cary v. Cochran,
138 Neb. 163, 292 N. W. 239. We conclude that the de-
partment had authority to make the findings and orders
herein about which defendants complained, and that
as hereinafter observed, they were not unreasonable or
arbitrary.

The record is voluminous. We can only summarize
the relevant and material competent evidence with re-
lation to the primary question of whether the Snake
River and the Niobrara River are essentially one stream
and a part of the same river basin and watershed, and
whether the Snake River exceeds 100 feet in width
so that diversion of water therefrom by plaintiff for
irrigation purposes would not be a violation of sections
46-206 and 46-265, R. R. S. 1943, as found and adjudged
by the Department of Water Resources. In that con-
nection, section 46-206, R. R. S. 1943, provides: "The
water appropriated from a river or stream shall not be
turned or permitted to run into the waters or channel
of any other river or stream than that from which it is
taken or appropriated, unless such stream exceeds in
width one hundred feet, in which event not more than
seventy-five per cent of the regular flow shall be taken."
Also, section 46-265, R. R. S. 1943, provides: "The
owner or owners of any irrigation ditch or canal shall

carefully maintain the embankments thereof so as to prevent waste therefrom, and shall return the unused water from such ditch or canal with as little waste thereof as possible to the stream from which such water was taken, or to the Missouri river."

The record discloses that the Ainsworth Irrigation District unit is an integral component of the comprehensive "Missouri River Basin Project." The physical and economic feasibility of the Ainsworth unit was approved by the Department of the Interior, and its construction was approved and authorized by the Congress of the United States. The proposed physical facilities of the Ainsworth Irrigation District are demonstrated on a map, exhibit No. 30, prepared by a witness for plaintiff, who was a civil engineer with the Bureau of Reclamation at Ainsworth since 1948, and who has worked on the Ainsworth project making field surveys from the river down to the lands to be irrigated, and in the bureau office making purchasing and cost estimates for feasibility reports. The Snake River flows north and slightly east into the Niobrara River, which first meanders north and east, then gradually turns and meanders east and southeast, and eventually empties into the Missouri River. Plaintiff's proposed Merritt Dam was planned and designed by the head of the earth dam design section of the Bureau of Reclamation in Denver, Colorado. The dam and reservoir will be constructed on the Snake River several miles south of its confluence with the Niobrara River. The dam will be some 140 feet high, with a spillway capacity of 1,150 cubic feet of water per second, and will store some 68,600 acre feet of water for irrigation. Due to high elevation of the area surrounding the dam and reservoir, it is unlikely that any land in the vicinity will be damaged by seepage. Plaintiff's canal, having an initial capacity of 620 cubic feet per second for carriage of water to the unit lands from the dam, will be constructed about 56 miles. It first extends in a northeasterly di-

rection, then gradually east and south, thence northeast to and through the lands to be irrigated, with unused waters eventually emptying into the Niobrara River, where they would have been eventually carried in any event. Enroute, plaintiff's canal will intersect and cross several smaller streams or watercourses, as authorized by section 46-153, R. R. S. 1943, all of which streams are tributaries of and flow north or northeast, where they eventually empty into the Niobrara River. In that connection, the canal will be fenced throughout, and constructed with typical siphons, cross drains, culverts, drops, and checks. Where the canal is above ground water, it will be lined with concrete and in the ground water area it will be given a gravel stabilizing lining. The problem of seepage has been given careful study and losses are expected to be normal, that is, "three-tenths of a cubic foot per square foot of canal perimeter," which has been the bureau's experience in 17 western states.

The project will irrigate 33,960 acres of generally flat and smooth table lands, ideally situated and classified for irrigation, farming, and stock raising. Such lands, with minor exceptions, have a top soil of 18 inches. As shown by a comparison exhibit, the Ainsworth project has the highest benefit cost ratio of seven other units included in the general development plan for the Missouri River basin. The project meets all the feasibility requirements of the federal government, with costs beyond the ability of the farmers to repay being "met by surplus power revenues of the basin-wide project." In computing production with and without irrigation, conservative consideration was given to the "best data * * * available from the State." Thus, it is estimated that by increasing net farm and livestock income by irrigation, the farmers will absorb the reasonable water charges payable without interest over a period of 40 years and greatly improve their financial situation. The evidence shows that from 1928 to 1952,

effective precipitation in the area was never sufficient to meet the demands of full crop production except in 1951, and then precipitation was not equitably distributed. Ordinarily, rainfall is sufficient in April, May, and June to give crops in the area a start, but in July, August, and September, when crops are maturing and need for rainfall is greatest, it is generally uncertain and inadequate. Without dispute, dry farming in the area was generally unsatisfactory or impossible, and pump irrigation is generally prohibitive in cost and not an adequate solution for water needs in the district.

The annual flow of the Snake River for 25 years has averaged about 192,300 acre feet of water per year, which is of excellent quality for irrigation, and only 91,800 acre feet annually will be diverted by the project, which represents only about 47 percent of the annual flow of the Snake River at Merritt Dam site. There are only a few small appropriations located upstream having any priority date, and as far as this record shows, no defendant herein holds any appropriation, or makes any claim to use of the water. It appears to be undisputed that there is plenty of water for all needs. The only appropriations downstream are two small power plants owned by Consumers Public Power District, who admittedly will be compensated if they are damaged.

This record does not show any substantial dispute that the Snake and Niobrara Rivers were in fact and law a single stream, basin, or watershed. Defendants called but one witness who became a licensed engineer in 1953 and worked for the Department of Roads and Irrigation on matters other than irrigation until 1956. He had made no field survey of any kind, and testified entirely hypothetically from topographic maps. He never had been employed as a consultant by any irrigation district. He at first defined a watershed as "a divide line where water will run in opposite directions," inferring thereby, as argued by defendants, that the Snake River and every stream or watercourse in the

area, which are all tributaries of and empty into the Niobrara River, had a separate watershed across which plaintiff could not transport water for irrigation, as it proposed to do. However, defendants' witness conceded that another definition of a watershed would place all of the area involved in the Niobrara River watershed. In that regard, he was asked: "Q You have talked about watersheds. A Right. Q What do you understand a watershed to be? A There are two definitions of watershed. The definition I was using was a divide line where water will run in opposite directions. The other definition would be toward a drainage area that drains into a given creek or stream. Q Within the latter definition, would you say this is all in the Niobrara watershed? A Yes sir." He was also asked: "Q Both surface and underground flow is in that direction? (Northeast) A Generally, they follow the same lines, yes. Q This whole area could be said to be part of the Niobrara drainage area? A That is true, yes sir."

Defendants also offered in evidence from exhibit No. 29, Geological Survey Water Supply-Paper 1371, p. 9, the following: "The Ainsworth unit lies within the Niobrara River basin and is drained by both overland runoff and subsurface outflow to the Niobrara River and its tributaries." Defendants further offered in evidence from exhibit No. 13, the final report of the Department of Interior, p. 55, which assumed that there was no diversion of water from one watershed to another, since the "return flows will naturally find their way and thus be in the same location within the State as though they never had been diverted."

A consulting engineer with offices in Denver was called as a witness by plaintiff. He has continuously practiced engineering since 1919 "entirely within the field of water development" and related matters. He and his firm carry on extensive state, national, and international activities in that field, having other offices

in at least five named foreign countries. The record contains a lengthy review of the many projects with which the witness has been or is now associated, including his services as consultant in disputes involving the use of waters in various streams and rivers. Thereafter he defined the pertinent terms "from an engineering standpoint" as follows: "When a river is spoken of, it generally means a river and all its tributaries above a given point, which is the point on the river that is being dealt with. A river and all its tributaries constitutes a watershed, which may be defined as all the area lying within a divide, above a given point on a river or stream. The term watershed is synonomous (sic) with river basin, drainage basin, or catchment area, except in some instances, where by definition for specific purposes, in connection with specific agreements, the basin may have been extended upon the natural watershed." He also cited concrete applications of such definition in several projects. In speaking of the Snake and Niobrara Rivers, he testified: "I defy anyone to delineate a divide between those two streams. *·* * I can't distinguish between the Snake and Niobrara. It is one watershed and no one can define it otherwise." Also, in the final analysis, defendants' only engineering witness did not disagree. In support of his definitions and conclusions aforesaid, and to illustrate previous administrative action by the state department in compliance therewith, plaintiff's witness prepared a large map reflecting all of the streams, systems, basins, and watersheds in Nebraska where irrigation development has occurred. Speaking with reference to defendants' contention, he testified that: "Under that concept there could not have been development of the major projects within the Platte river watershed, nor within the Republican river watershed, nor within the Loup river watershed. Development would be very much more minor than it is at the present time, and probably would be almost nil."

. Contrary to defendants' contention, the foregoing evidence adduced by plaintiff was properly admitted for consideration of the department in making its findings and orders. In that connection, we have held that: "Where the general intent of the Legislature may be readily ascertained, yet the language used in a statute gives room for doubt or uncertainty as to its application, courts may resort to historical facts or general information to aid them in interpreting its provisions." Placek v. Edstrom, 148 Neb. 79, 26 N. W. 2d 489, 174 A. L. R. 856.

We have also held: " 'That construction of a statute of doubtful meaning given it by those whose duty it is to enforce it, and which construction the legislature has by its continued noninterference for a number of years acquiesced in, will be approved, unless as thus construed it contravenes some provision of the Constitution, or is clearly wrong.' State v. Bryan, 112 Neb. 692, 200 N. W. 870." Chicago & N. W. Ry. Co. v. Bauman, 132 Neb. 67, 271 N. W. 256.

Also, we have held that: "Long-continued practical construction of a statute by the officers charged by law with its enforcement is entitled to considerable weight in interpreting that law." Flint v. Mitchell, 148 Neb. 244, 26 N. W. 2d 816.

Further, we have held that: "When a statute * * * is ambiguous or susceptible of two constructions, one of which creates absurdities, unreasonableness, or unequal operation and the other of which avoids such a result, the latter should be adopted." Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571.

Webster's New Twentieth Century Dictionary (2d Ed.), Unabridged, 1956, p. 2068, defines "watershed" as: "1. a ridge or stretch of high land dividing the area drained by different rivers or river systems. 2. the area drained by a river or river system." See, also, Webster's New International Dictionary (2d Ed.), Unabridged, 1943, p. 2886, which defines "watershed" as:

"The whole region or area contributing to the supply of a river or lake; drainage area; catchment area or basin."

In that connection, it is interesting to note that for administrative purposes by the Department of Water Resources, section 46-215, R. R. S. 1943, provides: "The State of Nebraska is hereby divided into two water divisions, denominated water division No. 1 and water division No. 2, respectively." Also, section 46-217, R. R. S. 1943, provides: "Water division No. 2 shall consist of all lands that may be watered from the Loup, White, *Niobrara* and Elkhorn rivers and their tributaries, and all other lands of the state not included in any other water division." (Italics supplied.) In such respect, plaintiff's application was entitled: "Application No. 5218. Water Division No. 2-C."

As we view it, the Snake River and the Niobrara River are for all intents and purposes but one and the same stream, comprising the same watershed or basin, and could as well have been called the north and south Niobrara. Under the circumstances in this case, a mere matter of having different names does not control the physical attributes or the character of the area through which they flow as one river basin or watershed without any dividing line between them. Cases comparable in all material respects are not cited or found, but statements found in some authorities are helpful in arriving at such conclusion.

In Dern v. Tanner, 60 F. 2d 626, it is said: "Tributary waters, branches, are inseparable parts of the main stream, and with it are subject to common appropriation and control in so far as reasonably necessary in irrigation as in navigation." The Snake River is admittedly a tributary of the Niobrara River.

Also, in E. C. Horst Co. v. New Blue Point Mining Co., 177 Cal. 631, 171 P. 417, citing authorities, it is said: "The mere fact that Wolf Creek has a separate name

and extends through another county does not make it less a part of Bear River."

In Osterman v. Central Nebraska Public Power & Irr. Dist., *supra*, this court took the position that the "Platte River or its tributaries" constitute one stream and basin or watershed. See, also, Frenchman Valley Irr. Dist. v. Smith, 167 Neb. 78, 91 N. W. 2d 415, which treated the Frenchman River and Stinking Water Creek as one stream.

We point out again that appellants in Osterman v. Central Nebraska Public Power & Irr. Dist., *supra*, admittedly attempted to transport water by canal from the Platte River basin or watershed across and into the Republican River basin or watershed to therewith irrigate lands situated wholly outside the Platte River valley basin and beyond the watershed or basin thereof. Objectors therein were either appropriators whose rights were based upon state irrigation laws, or riparians whose claims were incident to and arose out of ownership of and possession of lands bordering upon the Platte River or through which it ran, whose titles were initiated by settlement as early as 1857, and for which government patents issued earlier than 1870. The broad inference to be logically drawn from that opinion is that the state will not give its sanction to an appropriation of water which would in effect remove the waters of a river or stream from its natural basin or watershed and thereby cause it to be transported to another basin or watershed and lost to the communities which have grown up and developed in that basin or watershed. The opinion is entirely distinguishable as we view it from the case at bar on the facts and applicable law.

There is another factor which also becomes important in this case. Such factor is whether or not the Snake River exceeds 100 feet in width in order to come within the exception provided in section 46-206, R. R. S. 1943.

In that connection, section 46-206, R. R. S. 1943, deals primarily with a limitation of the amount of water that

may be appropriated and taken from rivers or streams more than 100 feet wide, and section 46-265, R. R. S. 1943, deals with the return of unused water transported in irrigation ditches or canals by the owner or owners thereof in order to prevent waste thereof. Although at first such sections seemingly are in conflict, in fact they are not if the water of the river or stream from which appropriated and taken is transported by irrigation ditches or canals to lands in the same basin or watershed and the unused water is returned into a river or stream in the same basin or watershed where it naturally would have flowed in any event but for the appropriation and taking.

This record overwhelmingly establishes that substantial relevant portions of the Snake River exceed 100 feet in width and that "there are times when the Snake river has a greater flow, and times when the Niobrara has a greater flow at the point of confluence." Admittedly, plaintiff would take for irrigation only about 47 percent of the Snake River flow. Admittedly, defendants' engineer never visited the area to make any inspection, survey, or measurements of the Snake River. His measurements of the width of the Snake River at some six points thereon were taken from an enlarged reproduction of an aerial photograph obtained from the files of the Department of Roads and Irrigation. Such photograph was admittedly taken September 30, 1939, some 20 years prior to this hearing. In that respect, his testimony that the widest such point on the Snake River was only 83 feet has little or no weight in this proceeding. We again call attention to the fact that such witness also admitted that the entire area here involved was in the Niobrara River basin or watershed.

On the other hand, plaintiff called as a witness a geologist for the Bureau of Reclamation on the Ainsworth project. He was born and raised in Ainsworth. He testified not only from experience since 1946 as a geologist for the bureau, but from experience in the

precise area for 12 years prior to 1943 while doing field work for the American Museum of Natural History. He identified a series of maps prepared by the bureau from field surveys which show that substantial portions of the Snake River exceed 100 feet in width. One such, exhibit No. 64, shows the upper end of the proposed reservoir area behind the proposed Merritt Dam. Such area, exceeding 100 feet in width, is colored blue, and comprises "about 12,000 feet, or somewhat over two miles." Another, exhibit No. 65, reflects an area downstream from exhibit No. 64, and so shows a "comparable" area exceeding 100 feet in width. Another, exhibit No. 66, being the "easternmost section of the three maps," so shows "those portions of the river where the waterway exceeds 100 feet." He testified that the three maps show "a reach of five river miles" where "the stream width exceeds 100 feet * * *. In fact, I know of places below the dam where this river width exceeds 100 feet."

Quadrangle maps appearing in this record also show that the Snake River exceeds 100 feet in width in the same or other areas. In such respect, exhibit No. 69, covering the proposed dam area, shows 10 such areas above the dam site and one below, varying in length from a few hundred feet up to a mile. Exhibit No. 70 reflects some 15 miles of the Snake River on upstream from exhibit No. 69, and shows 24 such areas of the same length. Exhibit No. 71 also joins exhibit No. 70 and reflects about 15 miles of the Snake River. It shows 25 such areas varying in length from a few hundred feet up to three-quarters of a mile.

In the case at bar, the proposed location and construction of irrigation canals and ditches, as well as the lands to be irrigated by the same, are located in and limited to the Niobrara River basin or watershed containing the source of the water to be used. All unused waters will be returned to the Niobrara River, thence to the Missouri River, where they would naturally have

flowed in any event through the Snake River and all other tributaries of the Niobrara River which lie in its basin or watershed. To hold otherwise would deprive 33,960 acres of irrigable land of needed water and permit it to be wasted in the Niobrara and Missouri Rivers, without authority of fact and law.

In this case, the orders of the Department of Water Resources properly appropriated and permitted water to be taken from the Snake River, which exceeds 100 feet in width, and is part and parcel of the Niobrara River basin or watershed. The findings and orders of said department are fully supported by the record and law. We conclude that the findings and orders of the Department of Water Resources should be and they are hereby affirmed. All costs are taxed to defendants.

AFFIRMED.