CITY OF GRAND ISLAND, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE, v. COUNTY OF HALL, STATE OF NEBRASKA, A BODY POLITIC AND CORPORATE, APPELLANT.

242 N. W. 2d 858

Filed June 2, 1976. No. 40377.

Sam Grimminger, for appellant.

Earl D. Ahlschwede, for appellee.

Heard before WHITE, C. J., SPENCER, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

McCOWN, J.

This is a declaratory judgment action by the City of Grand Island, Nebraska, to determine the amount to be paid by the city for keeping city prisoners in the jail of the defendant, Hall County, Nebraska. The District Court determined that the defendant county can only charge the city $3.50 per prisoner per day, and entered judgment accordingly. Hall County has appealed.

The facts are virtually all stipulated. Grand Island is a city of the first class and does not operate a jail in which to house city prisoners. City prisoners are therefore confined in the Hall County jail under statutory authorization. Section 16-252, R. R. S. 1943, provides: "Any city of the first class shall have the right to use the jail of the county for the confinement of such persons as may be liable to imprisonment under the ordinances of said city, but it shall be liable to the county for the cost of keeping such prisoners in such amounts as are provided by sections 33-117 and 33-117.01 for boarding prisoners other than state prisoners."

Section 33-117, R. S. Supp., 1974, provides in part:

"(1) The several sheriffs shall charge and collect fees as follows: * * * for guarding prisoners when it is actually necessary, four dollars per day, to be paid by the county; where there are prisoners confined in the county jail, three dollars shall be allowed the sheriff as jailer; for boarding prisoners, other than state prisoners, three dollars and fifty cents per day, in all counties where there is an average of less than fifty prisoners per day, * * * and ninety cents per day where there is an average of more than fifty such prisoners per day; and provided further, the fees for committing, guarding, confining, and the boarding of prisoners, other than state prisoners, in counties having a population of more than two hundred thousand inhabitants shall be governed by section 33-117.01.

"(2) The sheriff * * * shall pay all fees earned to the county treasurer, who shall credit same to the general fund of the county."

Section 33-117.01, R. R. S. 1943, applicable to counties having a population of over 200,000, provides in part: "The county sheriff shall have full charge and control of the quarters and service, and shall prepare and furnish all meals and provide all washing, fuel, lights and clothing for prisoners at actual cost to the county, * * * subject to the right of the county to be paid by the city for city prisoners at actual cost to the county."

It is stipulated that $8.50 per day per prisoner is the reasonable cost of keeping city prisoners in the county jail.

The trial court determined that under section 16-252, R. R. S. 1943, the city has the right to house prisoners in the county jail and the county can only charge the city the amount authorized by section 33-117, R. S. Supp., 1974, which is $3.50 per day, and entered judgment accordingly.

The county contends that it may charge a reasonable amount over and above the $3.50 per day up to the extent of the actual cost of holding and maintaining such

prisoners, including all direct or indirect costs. It also contends that if the cited statutes are construed to restrict the charge to the city to $3.50 per day, the statutes deprive the county of property without due process and discriminate between taxpayers of the county and taxpayers of the city.

The county's position rests upon the basic contention that sections 16-252, R. R. S. 1943, and 33-117, R. S. Supp., 1974, are ambiguous and irrational, and that a literal construction would lead to absurdity, hardship, or injustice. The county argues that it should be presumed that the Legislature could not have intended that the county be required to keep city prisoners for an amount less than the total reasonable amount of all costs and expenses which enter into the furnishing of such jail services. The argument here is that the Legislature must have inadvertently failed to express that intent with respect to prisoners of first or second class cities in smaller counties because it did express that intent with respect to state prisoners and with respect to city prisoners in counties of more than 200,000 population and also provided for contractual payments for primary class cities and joint city-county jails in other statutes. The difference in treatment is apparent, but that difference must be presumed to be intentional rather than inadvertent.

Section 16-252, R. R. S. 1943, is unambiguous. It provides that the city shall be liable to the county for "the cost of *keeping* such prisoners in such amounts as are provided by sections 33-117 * * * for *boarding* prisoners other than state prisoners." (Emphasis ours.) Where there is an average of less than 50 prisoners a day in the county jail, section 33-117, R. S. Supp., 1974, provides for only one amount as the fee for boarding prisoners and that is $3.50 per day. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain their meaning and this court cannot read a meaning into a statute which is unrelated by

legislative language, nor can it read plain, direct, and unambiguous language out of a statute. Crete Education Assn. v. School Dist. of Crete, 193 Neb. 245, 226 N. W. 2d 752. Where the language of a statute is plain and unambiguous, no interpretation is needed and the court is without authority to change the language. State v. Gallegos, 193 Neb. 651, 228 N. W. 2d 615.

The county also argues that the enactment of L.B. 676, Laws 1969, c. 67, p. 383, of the 1969 Legislature amending sections 15-264 and 47-306, R. R. S. 1943, constituted a repeal by implication of section 16-252, R. R. S. 1943. The 1969 legislative enactment amended section 15-264 dealing with primary cities and section 47-306 dealing with joint county and city jails by removing provisions granting a primary city the right to use the county jail, and substituted provisions granting the right to contract with the county, or, in the case of a primary class city, the right to contract for keeping prisoners with any other governmental subdivision or agency, local, state, or federal.

L.B. 676 of the 1969 Legislature specifically repealed former sections 15-264 and 47-306. It made no mention whatever of section 16-252, nor of section 17-566, which apply to first and second class cities respectively. Both of these sections grant the right to use county jails in identical language. Even if the language of amended section 15-264 could be applied to a first class city, it would still not be in conflict with the provisions of section 16-252. Under such circumstances it cannot be said that the Legislature intended, or even contemplated, repeal of any other statute by implication.

A statute will not be considered repealed by implication unless the repugnancy between the new provision and the former statute is plain and unavoidable. Repeals by implication are not favored and a construction of a statute which, in effect, repeals another statute, will not be adopted unless such construction is made necessary by the evident intent of the Legislature.

State ex rel. Rohrs v. Harris, 100 Neb. 745, 161 N. W. 253.

In the absence of evidence of clear legislative intent, a court should not give an interpretation to a statute which has the effect of nullifying another statute. Livestock Carriers Div. of M. C. Assn. v. Midwest Packers Traf. Assn., 191 Neb. 1, 213 N. W. 2d 443.

The county asserts that such a construction of the statutes is unconstitutional because it discriminates against the county and its taxpayers by indirectly requiring the county to perform city functions at less than cost. The same arguments claiming violation of due process and equal protection were raised in the case of State ex rel. City of Omaha v. Board of County Commissioners, 109 Neb. 35, 189 N. W. 639. That case involved a legislative act compelling the county to furnish offices for use by the municipal court of the City of Omaha. In that case this court held that such an enactment did not violate any constitutional provisions, and we said: "A county, 'being a mere instrumentality of the state for the convenient administration of government, is at all times, both as to its powers and its rights, subject to legislative control. * * *.' * * * The revenues of the county do not become the property of the county in the sense of private ownership, and the legislature has authority to prescribe the division and apportionment of money, raised by county taxation, between the county and a city within its limits.' * * * The state has invested the legislature with complete sovereign power, except so far as restricted by constitutional limitations. The question of the extent of legislative power is determined alone by these limitations."

The same principles were expressed by this court in Dwyer v. Omaha-Douglas Public Building Commission 188 Neb. 30, 195 N. W. 2d 236. In that case we quoted with approval language from Hunter v. City of Pittsburgh, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151: " 'Mu-

nicipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. * * * the number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. * * * The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States.' " See, also, Obitz v. Airport Authority of the City of Red Cloud, 181 Neb. 410, 149 N. W. 2d 105.

The Legislature is clothed with full power and control over the disposition of revenue derived from taxation, including that raised by political subdivisions of the state under authority of the state, subject only to constitutional restrictions. No constitutional restrictions inhibited or impeded the action of the Legislature here.

The county asks this court to rewrite a legislative enactment upon the ground that the legislation is unreasonable and inappropriate. Due process does not authorize courts to hold statutes unconstitutional simply because the court believes the Legislature may have acted unwisely. The wisdom or utility of legislation is for determination by the Legislature and not by this court.

The judgment of the District Court is affirmed.

AFFIRMED.