IN RE APPLICATIONS 15146 AND 15148 OF THE LITTLE
BLUE NATURAL RESOURCES DISTRICT.
LITTLE BLUE NATURAL RESOURCES DISTRICT, APPELLANT,
v. LOWER PLATTE NORTH NATURAL RESOURCES DISTRICT
ET AL., APPELLEES.

294 N. W. 2d 598

Filed June 24, 1980. No. 42853.

Robert B. Crosby and Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

George E. Svoboda and Sidner, Svoboda, Schilke, Wiseman & Thomsen, for appellees Lower Platte North, Loup River P.P.D., Lower Loup-Platte Water Assn., North Bend, Sanitary Improvement Dist. No. 3, Save the Platte Committee, Dennis Kucera, William D. Ingwersen, Frances M. Creech, William D. Hewit, John G. Tomek, et al.

James I. Shamberg of Cronin, Shamberg & Wolf, for appellees Central Platte N.R.D., Wood River, Marcia Oldfather, Leslie & Charlotte A. Robinson, Spring Creek Citizens Committee, County of Merrick, County of Dawson, Kearney, Harold Green, Jr., James B. Beltzer, John A. Wagoner, Joseph D. Martin, & Herbert F. Mayer, Jr.

William F. Austin, City Attorney, and William G. Blake, for appellee City of Lincoln.

James H. Truell, City Attorney, for appellee City of Grand Island.

Duane A. Burns and Mayer, Burns & Mayer, for appellee Central Nebraska Conservation Assn.

Lyle B. Gill, for appellee City of Fremont.

Patrick A. Parenteau, for appellees National Wildlife Federation, Neb. Wildlife Federation, & Save the Platte Committee.

David C. Nuttleman of Holtorf, Hansen, Kovarik & Nuttleman, for appellee North Platte N.R.D.

Jess C. Nielsen and Richard A. Birch of Jess C. Nielsen Law Offices, for appellees Twin Platte N.R.D. et al.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The present appeal calls upon this court to decide whether transbasin diversion is prohibited by either the Constitution or the laws of the State of Nebraska. While the resolution of that issue is of great importance, the issue necessary to determine that matter is extremely narrow. We believe that a reading of the pertinent sections of both the Nebraska Constitution and the applicable statutes leads us to the inescapable conclusion that transbasin diversion is not prohibited in Nebraska. We must, therefore, reverse and remand this matter to the director of the Department of Water Resources for further proceedings in accordance with this opinion.

The Little Blue Natural Resources District appeals from the order of the director of the Department of Water Resources dismissing its applications for authority to divert and store water from the Platte River for irrigation purposes.

The applications, which were filed on November

28, 1977, were dismissed without prejudice by the director on January 5, 1978. Pursuant to the rules of the department, the applicant then filed petitions for rehearing. Objections were filed by numerous parties including riparian owners, natural resources districts, and municipalities. After a lengthy hearing, the director denied the applications. From that order, the applicant has appealed to this court.

The applicant is a natural resources district established under Neb. Rev. Stat. § 2-3203 (Reissue 1977). Its territory includes parts of Adams, Webster, Clay, Nuckolls, Fillmore, Thayer, and Jefferson Counties. Much of the farmland within the district is suitable for irrigation but is farmed as dryland because of the lack of a ground water aquifer. An irrigation project was conceived and developed by the district to provide supplemental water to this area.

The project as proposed by the district contains three service areas. The North Service Area would be located generally in southeastern Kearney County, southwestern Adams County, and northwestern Webster County. The Central Service Area would be located generally in northern Webster County south of Campbell, Bladen, and Blue Hill. The East Service Area would be located generally in northeastern Webster County, northwestern Nuckolls County, and southwestern Clay County. The project includes a reservoir to be constructed on the Little Blue River northwest of Campbell, Nebraska, in Franklin County.

Water to supply the project would be diverted from the Platte River and transported through canals to the reservoir near Campbell. The applications which were filed by the district were for authority to divert 450 cubic feet of water per second of time from the river and to store 125,000 acre-feet of water in the reservoir near Campbell.

The Central Nebraska Public Power and Irrigation District, generally known as Tri-County, oper-

ates a supply canal south of the Platte River which transports water from a diversion dam on the Platte River east of North Platte, Nebraska, to a point near Overton, Nebraska, where the supply canal joins the Phelps County canal, a major irrigation canal operated by Tri-County. A wasteway located at this junction is used to return water to the river when it is not to be used for irrigation purposes. A gate located at the junction is used to send water in the supply canal into the Phelps County canal or into the wasteway.

The Little Blue project contemplates taking water at this structure, which would otherwise be returned through the wasteway to the river, and carrying it to the Campbell reservoir for storage for use during the following season. The plan contemplates the use of the Phelps County canal to a point near Axtell, Nebraska, where a new supply canal would be constructed which would connect with the Little Blue River southwest of Minden, Nebraska.

Since the Tri-County district would be using water for irrigation during the months of April through August, the Little Blue project would use the flow in the supply canal from September until January and would take only water which would otherwise be returned to the Platte River through the wasteway.

Although the parties raised some controversy as to the point of diversion, we think it is clear that the point of diversion is the location of the wasteway in the Platte River and it is of no importance that the Little Blue project proposes to take the water at the structure where the supply canal joins the Phelps County canal. It would indeed be wasteful to compel the construction of a new diversion dam to recapture the water after it has been discharged into the river. The plan which the Little Blue project has devised is the legal equivalent of such a method and the point of diversion is the location of the waste-

way where it joins the Platte River.

The director found there was unappropriated water in the Platte River sufficient to meet the demands of the proposed project, but that approval of the applications would result in water for irrigation purposes being taken from the Platte River and applied to land outside the basin of the Platte River, contrary to the rules announced by this court in *Osterman v. Central Nebraska Public Power and Irrigation District,* 131 Neb. 356, 268 N.W. 334 (1936). The director concluded that the *Osterman* case was controlling and, for that reason, the department was without authority to approve the applications. The applicant has appealed from the order denying the applications.

The finding of the director that there was unappropriated water in the Platte River sufficient to meet the demands of the proposed project is sustained by the record. The evidence shows that, after Lake McConaughy became filled in 1941, an average of more than 500,000 acre-feet of water has been discharged into the river through the Johnson wasteway near Overton, Nebraska, each year. In 1956, the year of the lowest discharge, 298,800 acre-feet of water was returned to the river through the wasteway. The average yearly river flow as measured at the Overton gauge downstream from the Johnson wasteway, but not including the discharge from the wasteway, has amounted to over 500,000 acre-feet. This evidence sustains a finding that there is sufficient unappropriated water to satisfy the applicant's appropriation of 125,000 acre-feet per year. If, in any particular year and for any reason, there was not sufficient water to satisfy the applicant's appropriation, the needs of the prior appropriators would be satisfied first, in accordance with the laws and regulations governing the appropriation of water, and the applicant would be restricted to the amount of water available for its use.

The narrow issue we need consider is whether, as urged by the appellees, our previous decision in *Osterman* is correct and transbasin diversion is prohibited in this state; or whether, as urged by the appellant, we should overrule the *Osterman* case and permit transbasin diversion and the instant project.

The *Osterman* case involved applications by the Central Nebraska Public Power and Irrigation District, generally known as Tri-County, to divert and store water from the Platte River for power purposes and to irrigate land in Gosper, Phelps, Kearney, and Adams Counties. Approximately 60 percent of the water to be used for irrigation purposes would have been transported out of the Platte River basin and applied to lands within the basin of the Blue River.

In the *Osterman* case, this court declared that, at common law, the right to use water was limited to the owners of riparian lands and, of necessity, there was "no right to transport waters beyond or over the divide or watershed that enclosed the source from which obtained." *Id.* at 366, 268 N.W. at 339. Then, from an analysis of various sections of the 1889, 1893, and 1895 irrigation statutes and amendments, and without citing any constitutional provisions, this court declared that § 46-620, Comp. Stat. 1929, now Neb. Rev. Stat. § 46-265 (Reissue 1978), was controlling over § 46-508, Comp. Stat. 1929, now Neb. Rev. Stat. § 46-206 (Reissue 1978), and prohibited any irrigation ditch or canal from crossing the divide or watershed so that unused waters applied to the land would be prevented from being returned to the source from which they were taken. The opinion concluded that "water for irrigation and power purposes taken from the Platte river or its tributaries may not be lawfully diverted over and beyond the southern watershed of that stream and applied to lands situated without the basin of the Platte river .

. . ." *Id.* at 370, 268 N.W. at 340-41. The orders appealed from were set aside and the cause remanded to the Department of Roads and Irrigation with directions to grant leave, if desired, to amend the applications to limit the use of the diverted waters to lands within the Platte River watershed.

Following the remand of the proceedings to the Department of Roads and Irrigation, the applications were amended in accordance with the directions of this court and, as amended, the applications were granted. The orders granting the applications provided that the water appropriated should not be "diverted over and beyond the watershed of the Platte River and applied to lands situated without the basin of the Platte River." *Cozad Ditch Co. v. Central Nebraska Public Power & Irrigation Dist.,* 132 Neb. 547, 549, 272 N.W. 560, 561 (1937). Subsequent appeals from the orders of the Department of Roads were dismissed. See, *Cozad Ditch Co. v. Central Nebraska Public Power & Irrigation Dist.; Osterman v. Central Nebraska Public Power and Irrigation District.*

The *Osterman* decision and the problems related thereto have been the subject of several law review articles, all of which have been critical of the conclusions reached therein. See, Doyle, *Water Rights in Nebraska,* 29 Neb. L. Rev. 385 (1950); Comment, *Waters and Water Courses,* 15 Neb. L. Bull. 271 (1937); Yeutter, *A Legal-Economic Critique of Nebraska Watercourse Law,* 44 Neb. L. Rev. 11 (1965); Oeltjen, Harnsberger, & Fischer *Interbasin Transfers: Nebraska Law and Legend,* 51 Neb. L. Rev. 87 (1971).

Our reading of the Nebraska Constitution and statutes applicable thereto, as well as our subsequent decisions in *Ainsworth Irr. Dist. v. Bejot,* 170 Neb. 257, 102 N.W.2d 416 (1960), and *Metropolitan Utilities Dist. v. Merritt Beach Co.,* 179 Neb. 783, 140 N.W.2d 626 (1966), leads us to the conclusion that it

is appropriate for us to reexamine our holding in the *Osterman* case.

The language of the Nebraska Constitution is clear and unambiguous with regard to the use of water. Neb. Const. art. XV, § 4, unequivocally provides: "The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want." The full impact of that provision has, in recent times, become so clear that further or additional reference or citation to support that declaration is unnecessary.

Neb. Const. art. XV, § 5, provides: "The use of the water of every natural stream within the State of Nebraska is hereby dedicated to the people of the state for beneficial purposes, subject to the provisions of the following section." It is significant to note that the quoted section refers to the use of the water of *every* natural stream being dedicated to "the people." Nothing in art. XV, § 5, indicates or authorizes limiting the use of the water of every natural stream to *within a particular watershed basin* or dedicating its use to the people living *within a particular watershed basin.* Quite to the contrary, the clear and unambiguous language constitutionally mandates that the use of *every* stream, regardless of its location, be dedicated to *all* of the people of the state, regardless of their location, and not just to those who happen to live within the confines of a particular valley or watershed basin. Nowhere within the Constitution can such limiting words be found.

That fact is further made clear when one looks at Neb. Const. art. XV, § 6, which provides, in part: "The right to divert unappropriated waters of every natural stream for beneficial use shall *never be denied* except when such denial is demanded by the public interest." (Emphasis supplied.)

The very purpose of art. XV, § 6, is to guarantee the right to divert unappropriated waters and to pro-

hibit the denial of such diversion except when demanded by public interest.

The language of art. XV, § 6, makes no distinction concerning a particular watershed district or basin but, quite to the contrary, prohibits denying the right to divert unappropriated waters except when demanded by the public interest. Nothing in the history of the constitutional provisions cited above, nor the language itself, in any manner justifies limiting the use of such waters to a particular basin or watershed.

The *Osterman* decision totally ignored the provisions of the Nebraska Constitution and relied solely upon the provisions of what is now Neb. Rev. Stat. § 46-265 (Reissue 1978) and was formerly § 46-620, Comp. Stat. 1929. It reads as follows:

> The owner or owners of any irrigation ditch or canal shall carefully maintain the embankments thereof so as to prevent waste therefrom, and shall return the unused water from such ditch or canal with as little waste thereof as possible to the stream from which such water was taken, *or to the Missouri River.*

(Emphasis supplied.) The *Osterman* court concluded that the phrase "or to the Missouri River" had no application, was not a part of the statute, and should be ignored. The court, therefore, concluded that former § 46-620 prohibited transbasin diversion.

There is no basis, however, to conclude that the phrase "or to the Missouri River" has no meaning. All of the water of the State of Nebraska empties into the Missouri River and, therefore, it must be concluded that diversion may occur so long as the unused portion of the water is not in some manner unnecessarily impounded or wasted and is returned to its natural stream of origin or to the Missouri River.

The *Osterman* decision further concluded that

former § 46-508, now § 46-206, which provides:

> The water appropriated from a river or
> stream shall not be turned or permitted to
> run into the waters or channel of any other
> river or stream than that from which it is
> taken or appropriated, *unless such stream*
> *exceeds in width one hundred feet, in which*
> *event not more than seventy-five per cent*
> *of the regular flow shall be taken.*

(emphasis supplied), was superseded by the provisions of § 46-620 and should be disregarded.

Cardinal rules of statutory construction, however, prohibit us from ignoring entire phrases of a statute or giving the plain meaning of a statute a strained or absurd interpretation. "Where the language of a statute is plain and unambiguous, no interpretation is needed and the court is without authority to change the language." *City of Grand Island v. County of Hall,* 196 Neb. 282, 286, 242 N.W.2d 858, 861 (1976).

In interpreting the meaning of a statutory provision, the whole provision should be read in order to arrive at a conclusion as to its proper meaning. *Pettigrew v. Home Ins. Co.,* 191 Neb. 312, 214 N.W.2d 920 (1974). Moreover, courts should give statutory language its plain and ordinary meaning. *State v. One 1970 2-Door Sedan Rambler,* 191 Neb. 462, 215 N.W.2d 849 (1974); *Connors v. Pantano,* 165 Neb. 515, 86 N.W.2d 367 (1957).

The statutory language is clear and unambiguous and does not require us to do more than read its plain meaning. "*A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning.*" *City of Scottsbluff v. Tiemann,* 185 Neb. 256, 264, 175 N.W.2d 74, 80 (1970) (emphasis in original). Furthermore, "In the construction of a statute, no sentence, clause, or word should be rejected

as meaningless or superfluous . . . ." *Weiss v. Union Ins. Co.,* 202 Neb. 469, 473, 276 N.W.2d 88, 92 (1979). Repeals by implication are not favored. A statute will not be considered repealed by implication unless the repugnancy between the new provision and the former statute is plain and unavoidable. *City of Grand Island v. County of Hall, supra.*

With these rules of construction in mind, we have no alternative but to recognize that both §§ 46-265 and 46-206 remain in effect and should be given meaning. If transbasin diversion is prohibited entirely, as urged by appellees, then the last clause of § 46-206, permitting the diversion of up to 75 percent of the water from a stream more than 100 feet wide, is meaningless.

When we then give both sections of the statute their plain meaning, we are left with no other conclusion but that, if a stream is more than 100 feet wide, up to 75 percent of the water not otherwise appropriated may be diverted so long as no waste is permitted, the unused portion is returned to its stream of origin or permitted to find its way back to the Missouri River, and the public interest does not otherwise require that such diversion be denied.

We avoided that conclusion in the *Ainsworth* decision by simply holding that the streams in question were in the same watershed district. The distinction was, at best, tenuous and, while it may have avoided for us the need to decide the issue, it did not change the fact that the law, in fact, prohibits denying transbasin diversion unless the public interest demands it.

When finally we reached the *Metropolitan Utilities* case, we were no longer able to make such fine distinctions and were required to face the transbasin diversion issue. In the *Metropolitan Utilities* case, *supra* at 800, 140 N.W.2d at 637, we said: "Where the reasonable use of the riparian landowner is not impaired, the public interest demands that such

waters be applied to a needed public purpose rather than be lost by proceeding unmolested to the sea." We recognize the right of all Nebraskans to share the water of the state.

In *Osterman, supra* at 362, 268 N.W. at 337, we said:

It would be a sad commentary on our political organization, upon the department of roads and irrigation, and upon this reviewing court, if in rationing this necessity of life this beautiful valley should be left with a dry river bed and ruined farms because of any mistaken theory that the protection of its natural fertility did not constitute a public interest within the policy of our laws.

We agree with that statement and believe that, under the provisions of our Constitution dealing with water, it is applicable to the entire state so long as the public interest does not otherwise demand. Would it not be a far sadder commentary if, in rationing this necessity of life, large areas of the state outside a particular valley were ruined while unappropriated water flowed into the Missouri River and on to other states.

When there is insufficient water to meet all needs, the Director of Water Resources may, under the law, limit the removal of water in accordance with statutorily established priorities similar to the restrictions imposed by the director and set out in *Cozad Ditch Co. v. Central Nebraska Public Power & Irrigation Dist., supra*. Under our present Constitution and statutes, the determination of what constitutes a public interest sufficient to either limit or deny, as the situation may demand, the right to remove unappropriated waters from a stream must, in the first instance, be determined by the director. The Constitution tells us that the desire and need for water for domestic and irrigation purposes is a "natural want" of all our citizens and we should not

unnecessarily deny it to any who can obtain it without doing harm to others.

We are unable to reach any other conclusion than that the *Osterman* decision must be overruled and that it now be the law in this jurisdiction that the unappropriated waters of every natural stream within the State of Nebraska may be diverted from one basin to another, except when such diversion is contrary to the public interest, in which case it shall be denied. Accordingly, we specifically overrule our earlier decision in *Osterman v. Central Nebraska Public Power and Irrigation District, supra.*

Having concluded that the director should no longer apply the prohibitions of the *Osterman* decision, we are required to reverse the director's decision and remand the case back to the director to determine whether the waters which he has already determined to be unappropriated may be taken without damage to the public interest. If they can, the permit should be granted. The judgment is, therefore, reversed and the cause remanded to the Director of Water Resources for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.