IN RE APPLICATIONS 15145, 15146, 15147, AND 15148 OF THE LITTLE BLUE NATURAL RESOURCES DISTRICT.
BASIN ELECTRIC POWER COOPERATIVE, APPELLANT, v. LITTLE BLUE NATURAL RESOURCES DISTRICT ET AL., APPELLEES.

363 N.W.2d 500

Filed March 1, 1985.   No. 84-175.

Lyman L. Larsen and Thomas R. Litjen of Kennedy, Holland, DeLacy & Svoboda, and Claire M. Olson, for appellant.

Robert B. Crosby and Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee Little Blue Natural Resources District.

Richard G. Kopf of Cook & Kopf, P.C., for appellee Central Platte Natural Resources District.

George E. Svoboda of Sidner, Svoboda, Schilke, Wiseman, Thomsen & Holtorf, and Lyle B. Gill, Fremont City Attorney, for appellees Lower Platte North Natural Resources District et al. and city of Fremont.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This appeal is from the denial of a motion seeking leave to intervene in a proceeding before the Department of Water Resources of the State of Nebraska (Department). The motion to intervene was filed by appellant, Basin Electric Power Cooperative (Basin Electric). Appellees are various parties appearing in the proceeding before the Department. The city of Fremont, Lower Platte North Natural Resources District, and other entities support Basin Electric's petition to intervene. Little Blue Natural Resources District (Little Blue) and Central Platte Natural Resources District oppose the proposed intervention.

The proceeding in which Basin Electric seeks to intervene began in November of 1977, when Little Blue filed applications with the Department seeking permits to divert and store over 300,000 acre-feet of water per year from the Platte River system for irrigation purposes. This proceeding has been before this court on two previous occasions. In *Little Blue N.R.D. v. Lower Platte North N.R.D.*, 206 Neb. 535, 294 N.W.2d 598 (1980) (*Little Blue I*), we held that transbasin diversion is not prohibited in Nebraska, and reversed the Department's denial of Little Blue's application. The proceeding was remanded to

the Department to determine if the proposed diversion was contrary to the public interest.

The Department, without holding further hearings, granted Little Blue's applications on remand. This decision then was appealed to the Nebraska Supreme Court by Lower Platte North Natural Resources District and others. This court, in *Little Blue N.R.D. v. Lower Platte North N.R.D.*, 210 Neb. 862, 317 N.W.2d 726 (1982) (*Little Blue II*), held that the Nongame and Endangered Species Conservation Act, Neb. Rev. Stat. §§ 37-430 to 37-438 (Reissue 1978), should have been considered by the Department and was not. We remanded the case, stating at 875, 317 N.W.2d at 734:

> We believe that, upon remand, further hearings should be held by the director and relevant evidence should be adduced relating particularly to those factors set forth in § 46-235 as now amended, as well as the project's effect upon the endangered species. In so holding we do not pass upon the validity of § 46-235.

The proceeding has been going forward before the Department since our remand in *Little Blue II* on March 19, 1982.

On January 6, 1984, Basin Electric filed its motion for leave to intervene in the proceeding, together with its petition in intervention. Basin Electric did not request an evidentiary hearing nor was one held. On February 23, 1984, this petition was denied, without prejudice, by order of the Department. Basin Electric did not file a motion for new trial, and appeals from the Department's order denying intervention. The order denying intervention is a final order for purposes of appeal. *Shold v. Van Treeck*, 82 Neb. 99, 117 N.W. 113 (1908). For the purposes of ruling on Basin Electric's motion for leave to intervene, we assume the allegations of the petition in intervention to be true. See, *Kozak v. Wells*, 278 F.2d 104 (8th Cir. 1960); *Rick v. Boegel*, 205 N.W.2d 713 (Iowa 1973).

Basin Electric set out in that petition that it is a cooperative corporation organized in North Dakota; that it is part owner and manager of the Laramie River Station near Wheatland, Wyoming, which station is a part of the Missouri Basin Power Project (the Project); that the Laramie station gets its cooling

water from the Laramie River, a tributary of the North Platte River; that in lawsuits begun in 1976 and 1978 in U.S. District Court including the State of Nebraska, Basin Electric, the Project, and others, the state sought to enjoin the completion of the Project because, as alleged by the state, the water depletion by the Project located near Laramie, Wyoming, would adversely affect endangered whooping cranes and their habitat on the Platte River between Chapman and Overton, Nebraska, called the Big Bend Area; and that on October 2, 1978, the U.S. District Court enjoined completion of construction of the Project.

The petition in intervention further alleged that because of the federal court order of October 2, 1978, the Project faced financial losses of approximately $100 million per year if construction were stopped; that, therefore, on December 4, 1978, the Project agreed to a negotiated settlement, called the Grayrocks Settlement, with all parties to that lawsuit; and that, pursuant to the settlement agreement, the Project agreed to limit its consumption of water to a maximum of 23,250 acre-feet of water per year, agreed to other water-related restrictions, and agreed to contribute $7,500,000 to a trust organized to help maintain the Big Bend Area in Nebraska as a habitat for the endangered whooping cranes.

The petition in intervention further alleged that in this case in which Basin Electric sought intervention, Little Blue and others sought to store or divert 300,000 acre-feet of water near the Big Bend Area, located approximately 280 miles downstream from the Project, and that the Big Bend Area is the same area which the state alleged was threatened by the water depletions sought by Basin Electric at the Project.

The petition in intervention further stated that Basin Electric was informed and therefore believed that certain parties to the current applications were engaged in settlement negotiations, that Basin Electric has a direct and immediate interest in the outcome for the settlement negotiations, that many citizens of Nebraska consume power supplied by the Project to Nebraska, and that it is in the public interest to ensure that the Project is not unnecessarily restricted in the production of power.

The petition further stated that no other party to the current

proceeding represents the exact interest of Basin Electric; that Basin Electric does not necessarily oppose the applications if the Department "finds, in fact, that their being granted will not affect adversely the critical habitat"; but that Basin Electric's interest is unique in that Basin Electric is entitled to relief if the Department would reach a finding inconsistent with the state's earlier position on the question of the whooping crane habitat.

Based on these factual allegations in its petition in intervention, Basin Electric concluded and asserted that it had a direct and immediate interest in the proceeding because the Department's actions in granting the applications of Little Blue and others may, in the words of the petition, "deplete the flows of the river in such fashion as to modify or destroy the required critical habitat of the Endangered Whooping Crane"; that it had a further direct and immediate interest "in seeing that the State of Nebraska is consistent and fair in the actions it takes with respect to the allocation of these water resources"; and that if the Department permits diversion and storage of over 300,000 acre-feet of water just a few miles upstream from the Big Bend Area, that action would be contrary to the position of the State of Nebraska in the federal court case where the state successfully opposed Basin Electric's use of more than 23,250 acre-feet of water 280 miles upstream from the Big Bend Area.

Basin Electric, in the prayer of its proposed petition in intervention, requested that it be made a party; that the applications be denied to the extent that the Department finds the granting of the applications "adversely affect[s] the critical habitat of the Endangered Whooping Crane"; and that in the event the Department finds that granting the applications will not adversely affect the habitat, it provide relief to Basin Electric and the Project "from the restrictive provisions pertaining to water usage contained in the 'Agreement of Settlement and Compromise' to the extent the jurisdiction of the Department permits."

Little Blue, in its response to Basin Electric's motion for leave to intervene, admitted that Basin Electric "was ill-advised when it negotiated the 'Agreement of Settlement and Compromise' " set out in the petition in intervention, and opposed the Basin Electric intervention, because intervention is not allowed as a

matter of right, is not timely, would serve no useful purpose, and would prejudice Little Blue. Other parties took various differing positions with regard to the proposed intervention—some opposing it and some supporting it.

As stated above, no evidentiary hearings were held on Basin Electric's motion to intervene. The question was submitted on briefs to the Department, and on February 23, 1984, the Department entered its order denying Basin Electric's petition in intervention.

The Department based its order on three determinations: (1) That Basin Electric had no rights to waters in the Platte River or its tributaries in Nebraska; (2) That the proposed intervention was untimely; and (3) That Basin Electric was not an indispensable party because it failed to show that it has information which will not be otherwise presented or that its interests cannot be protected by the parties to the proceeding.

Basin Electric timely appealed the Department's order, assigning as error the failure of the Department to grant Basin Electric's motion to intervene and in dismissing its petition in intervention. We affirm the action of the Department.

In its brief supporting its assignment of error, Basin Electric argues that it has a direct and immediate interest in the proceeding, and therefore has a right to be made a party, and that under the Department's own regulation Basin Electric was required to be made a party at its request.

In such an administrative proceeding we hold the "direct and immediate interest" referred to in the Department's regulation to be of the type recognized by Nebraska courts in such matters. We held in *Best & Co., Inc. v. City of Omaha*, 149 Neb. 868, 877-78, 33 N.W.2d 150, 156 (1948):

> The interest in a matter in litigation which will authorize a person to intervene in an action . . . must be such a direct and immediate interest that the person or persons seeking to intervene will either lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. . . . An indirect, remote or conjectural interest in the result of the suit is not enough to permit intervention.

See, also, *State ex rel. City of Grand Island v. Tillman*, 174

Neb. 23, 115 N.W.2d 796 (1962).

With regard to Basin Electric's alleged "direct and immediate interest" in the proceeding, the Department found that Basin Electric claimed no direct water use in Nebraska. That finding is supported by the allegations in Basin Electric's petition in intervention. Basin Electric takes an agreed-upon volume of water at a point at least 250 miles upstream from the proposed point of diverting water from the Platte River in the pending applications. That amount was agreed to by Basin Electric and apparently acceptable to it. There is nothing in the record before us pointed out by Basin Electric to indicate, in any way, that the volume of water sought by Little Blue in the pending applications will affect the amount of water which Basin Electric has agreed is sufficient for its purpose at a point at least 250 miles upstream. The water which Little Blue seeks in this case has long since passed the possible control of Basin Electric.

As stated in the Department's order denying intervention, "Waters unintentionally, or by previous commitments, intentionally having escaped Petitioner's [Basin Electric's] control are deemed unappropriated. They become the property of the public and are dedicated to the use of the people, subject to appropriation." In so holding the Department relied on Neb. Const. art. XV, §§ 4, 5, and 6, and the holding of *Northport Irr. Dist. v. Jess*, 215 Neb. 152, 337 N.W.2d 733 (1983). We believe the reliance of the Department on the cited sections of the Nebraska Constitution and the Nebraska law was proper. Under the facts as alleged in its petition in intervention, Basin Electric had no immediate and direct interest in the water which was the subject matter of the pending applications.

The remaining factual bases of Basin Electric's allegation that it has a direct and immediate interest in Little Blue's applications are two. First, Basin Electric alleged that in 1978 it contributed $7,500,000 pursuant to the Grayrocks Settlement in a U.S. District Court over whether Basin Electric should complete a power plant in Wyoming; that the State of Nebraska was a party to that Grayrocks Settlement; and that Basin Electric desires to make sure that the State of Nebraska, acting through the Department, acts fairly and does not decide the case so as to reduce the effect of the settlement. It is obvious

that the Department, in these pending applications, has no jurisdiction to affect, in any way, a settlement made 6 years ago in another court. The Department has no jurisdiction to interpret, in any binding way, the terms or results of that settlement. As a basis for intervention, neither the settlement nor Basin Electric's participation in that settlement gives Basin Electric a "direct and immediate interest" in these applications.

The second of the remaining bases for intervention may be summarized in a statement that Basin Electric is concerned about the continued, proper protection and operation of the whooping crane habitat near the Big Bend Area. If Basin Electric's concern is the protection of its contribution to the federal court settlement, that could not constitute a "direct and immediate interest" in this proceeding. Basin Electric made its contribution to establish a trust to protect the habitat for the whooping crane. That contribution has been made. Basin Electric's pecuniary interest in the trust has ended. The Department properly held that the establishment of the trust did not give Basin Electric any direct and immediate interest in this proceeding.

It is apparent of course that Basin Electric may allege, as could any other citizen, that it is interested in the protection of the whooping crane habitat. That, in and of itself, cannot constitute such a direct and immediate interest in this proceeding that mandatorily requires the granting of permission to intervene. Other citizens and groups have the same concerns and are before the Department.

Basin Electric's argument that the regulations of the Department state that permission must be granted to Basin Electric to intervene is decided by the foregoing holding that Basin Electric has no direct and immediate interest in this proceeding. The Department has adopted regulations pursuant to the requirements of Neb. Rev. Stat. ch. 84, art. 9 (Reissue 1981). The pertinent regulation is set out in the practice and procedures rules of the Nebraska Department of Water Resources, tit. 454, Ch. 4, § 001.09 (1983), entitled "Objectors," which provides:

Interested persons who have such a direct and immediate interest in the matter under consideration that

they may lose by direct operation of and legal affects of the determination which may be rendered shall be made parties upon their request; persons not so affected may be made parties to the proceedings upon their request at the discretion of the Director or Hearing Officer. If so included, such persons when made party to the proceedings shall be referred to as objectors.

While this regulation (which incidentally was amended by the Department in August of 1984) does not provide, in detail, the provisions of permissive interpretations and interventions of right as set out in Nebraska's statutes on intervention (Neb. Rev. Stat. §§ 25-328 to 25-330 (Reissue 1979)), it does set out the fundamentals of procedure resulting in intervention. The regulation provides that persons having a described form of interest in a proceeding *shall* be made a party at their request, and the other persons *may* be made a party. As set out above, the Department has found that Basin Electric has no such "direct and immediate" interest in the proceeding that it must be made a party, and we have agreed.

With regard to Basin Electric's further arguments that its petition in intervention must be granted because its position is unique and its motion for leave to intervene was timely, we note, first, that Basin Electric's petition in this proceeding was found by the Department to be untimely. On March 19, 1982, Little Blue's second appeal from the decision of the Department was granted in this court and the proceeding remanded with directions that "further hearings should be held by the director and relevant evidence should be adduced relating particularly to those factors set forth in § 46-235 as now amended, as well as the project's effect upon the endangered species." *Little Blue N.R.D. v. Lower Platte North N.R.D.*, 210 Neb. 862, 875, 317 N.W.2d 726, 734 (1982). The Department was specifically ordered to receive evidence and consider the very factors now alleged in Basin Electric's petition in intervention with regard to the endangered species. Nonetheless, Basin Electric did not file its motion for leave to intervene until January 6, 1984—almost 2 years later. Neither the Administrative Procedures Act (Neb. Rev. Stat. § 84-901 and §§ 84-909 to 84-916 (Reissue 1981)) nor the regulations of the Department provide for any time limits

on the rights of parties to intervene either as a matter of right or permissively. Nonetheless, the Department, as an agency of the State of Nebraska, must have sufficient latitude in its operations in matters under its jurisdiction to exercise that jurisdiction fairly. As set out in *County of Blaine v. State Board of Equalization & Assessment*, 180 Neb. 471, 474, 143 N.W.2d 880, 883 (1966):

> The procedure which the Administrative Procedures Act prescribes for use in contested cases by administrative agencies is essentially that which is normally used in adversary proceedings. In applying the Administrative Procedures Act to the proceedings of the State Board of Equalization and Assessment, some consideration must be given to the particular nature of the state board including its purpose and function.
>
> . . . .
>
> It is apparent that a procedure which might be suitable for a hearing involving relatively few parties would not be practicable where the parties are numerous and the issues complex.

We hold that in cases before it, where the Department does not abuse its discretion, the Department may legally deny the late intervention of a person or entity. In this proceeding the Department found as follows:

> [H]owever, it is deemed Petitioner's [Basin Electric's] participants [sic] would result in delay and disruption.
>
> Pursuant to the provisions of the so-called Grayrocks Settlement, Petitioner is one of the trustees of the Platte River Whooping Crane Critical Habitat Maintenance Trust. The Director has noted that employees of the Trust have observed these proceedings on several past occasions. Petitioner has for several years had the means of knowing about these proceedings. Additionally, several Trust employees are presently scheduled to appear as witnesses in these proceedings. Presumably their observations of the proceedings as witnesses can and will be reported to the Trustees. Thus, knowledge of these proceedings has not come suddenly to the Trust or to the Petitioner. Intervention at this point in these proceedings

is not timely. It could result in undue and unnecessary burdens to the Applicant and other objectors of record.

We determine the Department had authority to make such determinations in connection with permissive intervention and did not abuse its discretion in finding that Basin Electric's intervention was not timely.

The same Department finding disposes of Basin Electric's argument that its position is unique. The proceeding has been going on since 1977, and in its latest phase, concerning the whooping crane habitat, for almost 2 years. The Department found that employees of the very trust to which Basic Electric contributed have been observing the proceeding for several years. National and local wildlife organizations have been in the proceeding for years and protect the same interests as Basin Electric in this regard.

The action of the Department in denying Basin Electric's petition in intervention is affirmed.

AFFIRMED.