ROBERT A. MULLENDORE, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, APPELLANT AND CROSS-APPELLEE, V. SCHOOL DISTRICT NO. 1 OF LANCASTER COUNTY, NEBRASKA, ET AL., APPELLEES AND CROSS-APPELLANTS, RICHARD NUERNBERGER, COUNTY TREASURER OF LANCASTER COUNTY, NEBRASKA, APPELLEE.

388 N.W.2d 93

Filed June 6, 1986.    No. 85-055.

John F. Recknor of Barlow, Johnson, DeMars & Flodman, for appellant.

James B. Gessford of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., for appellees School Districts.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Robert A. Mullendore commenced a class action in the district court for Lancaster County, seeking a declaratory judgment that Neb. Rev. Stat. § 79-4,102 (Cum. Supp. 1982) [1982 Neb. Laws, L.B. 933] is unconstitutional and an injunction prohibiting Lancaster County Treasurer Richard Nuernberger and various Lancaster County area school districts from operating under the questioned statute. The district court overruled a demurrer by the school districts but

granted the school districts' motion for summary judgment, finding that Mullendore's action was rendered moot by the enactment, in July 1984, of 1984 Neb. Laws, L.B. 930 [§ 79-4,102 (Cum. Supp. 1984)], which explicitly repealed L.B. 933. Mullendore appeals from that summary judgment. The school districts cross-appeal the overruling of their demurrer. Defendant Nuernberger did not join in the demurrer or motion for summary judgment, and Mullendore's action remains pending against Nuernberger.

L.B. 933, which became effective on July 1, 1982, was enacted as part of a statutory scheme for computing and allocating nonresident high school tuition rates. Under such scheme the parent or guardian of any high school age pupil residing in a school district which does not maintain a high school grade may apply for nonresident high school tuition privileges to districts maintaining such grade. See Neb. Rev. Stat. §§ 79-494 et seq. (Reissue 1981). By L.B. 933, a school district which decided to receive nonresident high school pupils computed a nonresident tuition rate and certified that rate to the superintendent of the county where the pupils resided. L.B. 933 allowed a receiving school district to set the high school tuition rate on a "uniform taxation basis." The rate to be certified by a receiving school district was "any amount decided by the receiving board but not less than the per pupil cost [nor more than] one hundred twenty-five per cent of the computed rate." Eventually the board of equalization for the resident county levied a tax on "the actual value of all the taxable property" in the county, which taxes are collectible by the county treasurer and distributable to the receiving school districts. See Neb. Rev. Stat. §§ 79-436 and 79-437 (Reissue 1981). L.B. 933 authorized a taxpayer's appeal from the board of equalization's action, that is, an appeal in the manner provided in Neb. Rev. Stat. §§ 77-1606 to 77-1610 (Reissue 1981).

Mullendore alleges that he is a resident of Lancaster County and an owner of property which is located in a Lancaster County Class I school district and which is subject to taxation for nonresident high school tuition. See § 79-436. Mullendore also alleges he brings the action for himself and as a class action

on behalf and for the benefit of all owners of taxable property located in Lancaster County Class I school districts. See Neb. Rev. Stat. § 25-319 (Reissue 1985). In his amended petition filed on June 20, 1983, Mullendore, "on behalf of himself and all others similarly situated," asserted two causes of action regarding L.B. 933. Pursuant to Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985), Mullendore first sought declaratory judgment that L.B. 933 was unconstitutional, contending, in part, that the statute improperly delegated legislative authority to a receiving school district and the State Department of Education; permitted a receiving school district to establish nonresident tuition rates in excess of the per pupil cost of providing high school education; and conferred a special privilege or amenity upon a receiving school district by allowing distribution of taxes levied and collected for nonresident high school tuition, notwithstanding a taxpayer's appeal challenging the legality of such taxes. In his second cause of action, Mullendore asked for a permanent injunction prohibiting Nuernberger, as county treasurer, from collecting and distributing nonresident tuition taxes determined to be void and a permanent injunction prohibiting the school districts from establishing nonresident tuition rates under L.B. 933. Mullendore's amended petition did not allege that taxes for the questioned nonresident tuition had in fact been levied and collected as authorized by L.B. 933.

The school districts demurred, claiming that each of Mullendore's two causes of action failed to state sufficient facts. See Neb. Rev. Stat. § 25-806(6) (Reissue 1985). The court overruled the school districts' demurrer.

The Unicameral subsequently enacted L.B. 930, supplying the current statute, § 79-4,102 (Cum. Supp. 1984), which became effective on July 10, 1984. That statute explicitly repealed L.B. 933 and provided a different method for determining the nonresident tuition rate. Under § 79-4,102 (Cum. Supp. 1984) the finance division of the State Department of Education determines the nonresident high school tuition rate and certifies that rate to a receiving school district, which may reduce the figure to an amount not "less than the per pupil cost in the district."

After enactment of L.B. 930 in 1984, the defendant school districts moved for summary judgment, claiming that passage of L.B. 930 rendered Mullendore's action moot. At a hearing held on August 22, 1984, the school districts, as part of an affidavit, introduced a copy of L.B. 930, which, together with the pleadings, constituted the only evidence before the court for the purpose of the summary judgment sought by the school districts. The court granted a summary judgment and dismissed both causes of action, stating:

> [T]here are no genuine issues of material fact and . . . defendants are entitled to judgment as a matter of law. L.B. 933 which plaintiff seeks to enjoin and have declared unconstitutional no longer exists and therefore for purposes of a declaratory judgment action and an injunction action this case is moot.

Mullendore contends the district court erred in finding both of his causes of action were rendered moot by enactment of § 79-4,102 (Cum. Supp. 1984). In their cross-appeal the school districts maintain that the court erred in overruling their demurrer, contending that neither a declaratory judgment nor an injunction is the appropriate method to question the constitutionality of L.B. 933.

We first consider the school districts' contention that their demurrer should have been sustained regarding Mullendore's first cause of action, that is, declaratory judgment is not available in testing the constitutionality of a tax statute. Section 25-21,149 provides as follows:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

"The purpose of the Declaratory Judgments Act is to provide a procedure for the speedy determination of issues which would otherwise be delayed to the possible injury of the

parties." *Murphy v. Holt County Committee of Reorganization*, 181 Neb. 182, 184, 147 N.W.2d 522, 524 (1966). See, also, *Scudder v. County of Buffalo*, 170 Neb. 293, 102 N.W.2d 447 (1960). "An action for a declaratory judgment is an appropriate remedy to determine the validity, construction, or interpretation of a statute." *Xerox Corp. v. Karnes*, 217 Neb. 728, 731, 350 N.W.2d 566, 568 (1984). The provisions of the declaratory judgments act are remedial in nature and are to be liberally construed and administered. See § 25-21,160.

The remedy of declaratory judgment may be available to a litigant when a controversy exists as a result of a claim asserted against one who has an interest in contesting such claim, the controversy is between persons whose interests are adverse, the party seeking declaratory relief has a legally protectable interest or right in the subject matter of the controversy, and the issue involved is capable of present judicial determination. See, *Slosburg v. City of Omaha*, 183 Neb. 839, 165 N.W.2d 90 (1969); *Berigan Bros. v. Growers Cattle Credit Corp.*, 182 Neb. 656, 156 N.W.2d 794 (1968); *Nebraska Seedsmen Assn. v. Department of Agriculture & Inspection*, 162 Neb. 781, 77 N.W.2d 464 (1956). Where such conditions are met, a decision to entertain an action for declaratory relief is discretionary with a trial court. See, *Sim v. Comiskey*, 216 Neb. 83, 341 N.W.2d 611 (1983); *Graham v. Beauchamp*, 154 Neb. 889, 50 N.W.2d 104 (1951). Availability of other remedies is a factor bearing upon a trial court's discretionary decision whether to entertain an action for a declaratory judgment. Thus, a trial court may, at its discretion, refuse to entertain an action for declaratory judgment where another "equally serviceable remedy" has been provided by law. See, *Zarybnicky v. County of Gage*, 196 Neb. 210, 241 N.W.2d 834 (1976); *Murphy v. Holt County Committee of Reorganization, supra*.

When Mullendore commenced his action, the requisite conditions for obtaining declaratory relief did exist. The school districts maintain, however, that § 77-1606 and Neb. Rev. Stat. § 77-1735 (Cum. Supp. 1984) provide equally appropriate and available methods for a direct challenge to the constitutionality of L.B. 933. Section 77-1606 provides in pertinent part:

> Any taxpayer may appeal from the action of the county board of equalization in making the levy, if in the judgment of such taxpayer the levy is for an unlawful or unnecessary purpose . . . . No appeal shall in any manner suspend the collection of any tax, nor the duties of the officers relating thereto during the pendency of the appeal . . . .

Section 77-1735 states in part:

> If a person who claims a tax or any part thereof to be invalid for any reason other than the valuation of the property shall have paid the same to the treasurer or other proper authority in all respects as though the same was legal and valid, he or she may, at any time within thirty days after such payment, demand the same in writing from the county treasurer to whom paid. If the same shall not be refunded within ninety days thereafter, he or she may sue such county treasurer for the amount so demanded.

L.B. 933 itself mentions § 77-1606 as a method for an appeal from a county board of equalization's levy for nonresident tuition. Although §§ 77-1606 and 77-1735 provide an individual taxpayer with methods to challenge constitutionality of a tax, the statutes mentioned, for the most part, contemplate judicial relief after payment of the tax imposed.

This court has frequently recognized an action for a declaratory judgment as an appropriate method to challenge the constitutionality of a tax statute. See *Xerox Corp. v. Karnes, supra*. In *Mann v. Wayne County Board of Equalization*, 186 Neb. 752, 186 N.W.2d 729 (1971), in fact, we considered, without objection, an action for declaratory judgment challenging the constitutionality of the predecessor to § 79-4,102. A declaratory action allows speedy determination of facial validity of a tax statute. Under the circumstances of this case, and in light of the purposes underlying declaratory relief, the statutory remedies found in §§ 77-1606 and 77-1735, which are premised on a taxpayer's payment of a tax before contest of the validity of that tax, are not equally serviceable to resolve a question concerning constitutionality of the tax statute in question, namely, § 79-4,102 (Cum. Supp. 1982).

The school districts also contend that Mullendore's amended petition constitutes an impermissible collateral attack on the tax statute contained in L.B. 933. Specifically, the school districts cite *Richardson v. Board of Education*, 206 Neb. 18, 26, 290 N.W.2d 803, 808-09 (1980), wherein this court stated:

"A collateral attack upon a judgment will not lie unless the judgment is absolutely void. Where the court has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack because the judgment is only voidable and not void." [Citation omitted.] "The rule against collateral impeachment of judicial decisions applies to the determinations of state and county officers or boards of officers, who, although not constituting a court, are called on to act judicially in matters of administration. . . ." [Citations omitted.]

. . . "A statute is presumed to be constitutional and a judgment entered on an unconstitutional statute is not absolutely void but is voidable only."

The above-cited principles are not applicable to the present case. In *State ex rel. City of Omaha v. Lynch*, 181 Neb. 810, 814, 151 N.W.2d 278, 281-82 (1967), we described the nature of a tax levy as follows: " 'The levy of a tax is not a judicial function, nor is it merely the ministerial action of ascertaining the rate per cent; but it is a legislative function to be exercised only by the state or some inferior political division to which the state has delegated the power.' " In *Frye v. Haas*, 182 Neb. 73, 75, 152 N.W.2d 121, 124 (1967), we stated: "The power to levy a general tax is inherent in the sovereign [and] is purely legislative in character." In *Frye* we concluded that a collateral attack on a tax statute is an appropriate method to raise the question of constitutionality of a tax statute in order to provide due process for an aggrieved taxpayer. Under the taxing scheme supplied by L.B. 933 (§ 79-4,102 (Cum. Supp. 1982)) for nonresident high school tuition, school districts would set the nonresident tuition rate, and the appropriate county board of equalization would levy the tax accordingly. Such a process does not result in a judicial or quasi-judicial determination immune, as a general rule, from collateral attack. The district court did not err in overruling the school districts' demurrer to Mullendore's first

cause of action.

The next question is whether the passage of § 79-4,102 (Cum. Supp. 1984) rendered the action for declaratory judgment moot. " ' "A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights. . . ." ' " *Hafeman v. Gem Oil Co.*, 163 Neb. 438, 468-69, 80 N.W.2d 139, 158 (1957). "In general a case becomes moot ' "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." ' " *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982). "The province of a court is to decide real controversies and to determine rights actually controverted, and 'The judicial power does not extend to the determination of abstract questions.' " *Fremont Cake & Meal Co. v. Wilson & Co.*, 183 F.2d 57, 59-60 (8th Cir. 1950).

Mullendore suggests that resident taxpayers of the school districts may not have paid the taxes levied under L.B. 933. Also, Mullendore contends that determination of L.B. 933's constitutionality is not moot, because taxes levied and collected under that statute would still entitle a taxpayer to a refund for an invalid tax under Neb. Rev. Stat. § 77-1736.04 (Reissue 1981), which provides in pertinent part as follows:

> If, by judgment or final order of any court of competent jurisdiction in this state, in an action not pending on appeal or error, it has been or shall be adjudged and determined that any personal property or real estate tax, assessment, or penalty or any part thereof was illegal and such judgment or order has not been made or shall not be made in time to prevent the collection or payment of such tax, assessment, or penalty, then such tax, assessment, or penalty, whether expended or not, which has been collected pursuant to such illegal tax, assessment, or penalty for the year such tax, assessment, or penalty is determined to be illegal shall, without the necessity of filing a claim therefor, be repaid and refunded in the county where originally paid to the person paying such tax, assessment, or penalty. . . . The county board shall certify the refund to the collecting officer, who shall pay the same from funds in his possession belonging to the

taxing districts to the extent that such taxing districts profited from the overpayment of taxes by the claimant; *Provided*, that if the collecting officer does not have sufficient funds in his possession belonging to such taxing districts, or if the governing body of such taxing district or districts shall certify to him that the payment of such refunds at that time would seriously interfere with their governmental functions, then the collecting officer shall register the refund as a claim as against such taxing district or districts . . . . It shall be the responsibility of the governing body of each taxing district to determine the amount of the liability of such district for refunds and to make provision in its budget therefor.

According to the amended petition, Mullendore and the other resident taxpayers own property subjected to taxation by the school districts. Although Mullendore has alleged that the school districts had certified tuition rates pursuant to L.B. 933, the record does not conclusively establish that taxes authorized by L.B. 933 have been collected from Mullendore and other resident taxpayers of the school districts. Mullendore's amended petition, considered by the district court in connection with the motion for summary judgment, see Neb. Rev. Stat. § 25-1332 (Reissue 1985), provides a reasonable inference that taxes have been levied under L.B. 933 against the property of Mullendore and other resident taxpayers of the school districts. If taxes levied against the property of resident taxpayers have been paid, a declaration of unconstitutionality would resolve a real or actual controversy between the school districts and their resident taxpayers. On the assumption that taxes have been collected, an action for declaratory judgment is not moot, since a declaration of unconstitutionality may entitle an individual taxpayer to a refund of taxes paid. See, § 77-1736.04; *Hansen v. County of Lincoln*, 188 Neb. 461, 197 N.W.2d 651 (1972) (§ 77-1736.04 provides for a refund to an individual taxpayer and does not contemplate that a court entering a judgment declaring a tax invalid will in a class action supervise the tax refund). Also, in view of § 77-1736.04, the defendant school districts have a direct economic stake in refunds to be granted in the event of any declaration of

unconstitutionality as a result of the present proceedings.

"Summary judgment may be properly granted where there exists no genuine issue as to any material fact in the case, the ultimate inferences to be drawn from those facts are clear, and the moving party is entitled to judgment as a matter of law." *Harrold v. Spaghetti Tree, Inc.*, 219 Neb. 139, 140, 362 N.W.2d 44, 45 (1985). "In considering a motion for summary judgment, the court views the evidence in the light most favorable to the party against whom it is directed, giving that party the benefit of all favorable inferences that may be drawn therefrom." *Peterson v. Gering Irr. Dist.*, 219 Neb. 281, 282, 363 N.W.2d 145, 147 (1985).

> [T]he party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists; that party must therefore produce enough evidence to demonstrate his entitlement to a judgment if the evidence remains uncontroverted, after which the burden of producing contrary evidence shifts to the party opposing the motion.

*Gall v. Great Western Sugar Co.*, 219 Neb. 354, 355-56, 363 N.W.2d 373, 375 (1985).

The record before us raises a question of fact regarding the viability of an action for declaratory judgment, which question underlies the substantive constitutional claims asserted by Mullendore. The school districts' introduction of a copy of L.B. 930, repealing its predecessor, L.B. 933, did not satisfy the burden of showing that no viable cause of action survived repeal of L.B. 933. The district court erred in summarily dismissing Mullendore's action for declaratory judgment. Thus, we reverse the district court's summary judgment on Mullendore's first cause of action and remand for further proceedings.

We believe that the provisions of § 77-1606 dispose of Mullendore's claim of error regarding dismissal of his second cause of action and, likewise, dispose of the cross-appeal by the school districts. Section 77-1606 expressly provides that any taxpayer's appeal concerning the legality of a tax levied shall not suspend collection of the tax in question. When collected by the county treasurer, the tax must be distributed to the school

districts entitled to the tax collected. Neither collection nor distribution of the tax may, therefore, be enjoined under the circumstances described in Mullendore's amended petition. Also, L.B. 933 no longer involves a receiving district in the process of determining the nonresident tuition rate. By virtue of L.B. 933, determination of the nonresident high school tuition rate is made by the finance division of the State Department of Education of the State of Nebraska. Since school districts have been removed from participation in determining any rate for tuition under § 79-4,102 (Cum. Supp. 1984), there is no real controversy and basis for injunctive relief against a school district. The district court should have sustained the school districts' demurrer to Mullendore's second cause of action, that is, under the existing law governing determination of the rate for nonresident high school tuition, injunctive relief was not possible on the facts and ground alleged. Therefore, that aspect of the district court's judgment, dismissing Mullendore's second cause of action against the school districts, is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WHITE, J., participating on briefs.