# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-3662

INDIANA LAND COMPANY, LLC,

*Plaintiff-Appellant*,

v.

CITY OF GREENWOOD,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 01-0533-C-B/G—**Sarah Evans Barker**, *Judge*.

_____

ARGUED MARCH 30, 2004—DECIDED AUGUST 10, 2004

_____

Before POSNER, RIPPLE, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, a real estate developer, brought suit for damages against the City of Greenwood, Indiana, under 42 U.S.C. § 1983, charging violations of the due process and equal protection clauses of the Fourteenth Amendment. The district court granted summary judgment in favor of the City, and the developer has appealed. The facts, which concern events that occurred in 2000, are not in dispute. The plaintiff had signed a contract to buy 142 acres adjoining the City for development as a residential subdivision. For such development to be possible, the plaintiff had

to get the City to annex the acreage and rezone it from agricultural to residential use. The contract was made conditional on the plaintiff's obtaining these legal changes from the City.

The authority of the City Council of Greenwood to make such changes is not contested. The plaintiff had first, however, to submit its proposal to the City's Plan Commission. The Commission didn't like the proposal and recommended that the City Council turn it down. The Council convened a public hearing, and after discussion voted on the plaintiff's proposal. The vote was 3-3. The Council has seven members, but one was absent. State law provides that a mayor, although he shall preside at meetings of his city's council, may vote only to break a tie. Ind. Code 36-4-6-8(b). But since there was a tie, the Mayor of Greenwood voted—to grant the plaintiff's application. A member of the Council objected, pointing out that an ordinance of Greenwood required a two-thirds vote to overturn a recommendation of the Plan Commission. The state zoning statute, however, provides that a city council or other legislative body "may take action . . . only by a vote of at least a majority of all the elected members of the body." Ind. Code 36-7-4-609(b). Moreover, "if there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." Ind. Code 36-1-3-6(a).

The Council directed the City Attorney to research the legality of the two-thirds ordinance in light of these statutory provisions. She did so and advised the Council that in her opinion the two-thirds requirement was invalid because inconsistent with still another Indiana statute, which provides that "a majority vote of the legislative body is required to pass an ordinance, unless a greater vote is required by statute." Ind. Code 36-4-6-12. A public hearing

was convened at which the Council debated the issue and concluded that the ordinance's two-thirds requirement was valid, noting among other reasons for so concluding that the state statute(s) could be interpreted as making a majority vote a floor rather than (also) a ceiling. Yet having so concluded and having gone on to decide that since the requirement was valid the plaintiff's application had been validly denied, the Council forthwith repealed the requirement with respect to future decisions on recommendations of the Plan Commission; approvals would henceforth require only a simple majority.

The Mayor advised the plaintiff to make some changes in its application and resubmit it to the Plan Commission, which was done and this time the Commission recommended that the Council approve the plaintiff's application. The Council convened another public hearing to consider the matter. At this meeting (the third on the plaintiff's application), with all members present, the Council voted down the application by a 4-3 vote, precipitating this suit. As a result of the Council's action the contract lapsed and the plaintiff didn't get to develop the 142 acres; we learned at argument that another developer later received the approval that the plaintiff had sought and that the tract is now indeed a residential subdivision.

The City argues that the majority vote against the plaintiff's application in the last meeting makes the lawsuit moot. Since a majority of the Council voted down the application when the Plan Commission had approved it (and by a lopsided vote of 8-2), how likely is it that the Council, had it not been for the absence of one of its members, would have approved it earlier when the Plan Commission had recommended against approval? Not as unlikely as may seem, because the Council member who had missed the first vote voted in favor of the application at the final hearing

and might have done so at the first meeting despite the adverse recommendation of the Plan Commission and the fact that the plaintiff had sweetened its application between the first and third hearings. But it doesn't matter how likely or unlikely this was. For what the plaintiff is seeking is a determination that the first vote taken by the Council, the one that approved the plaintiff's application though by less than a two-thirds vote, was valid, in which event there would have been no second, negative vote. In effect, there was a change in membership between the two votes (the mayor, in the first vote, was replaced in the second vote by the member of the City Council who had been absent when the first vote was taken), and the plaintiff is arguing that the change violated the Fourteenth Amendment and therefore should have no legal effect. And if it has no legal effect, only the vote approving the plaintiff's application is in the picture. It is thus like a case in which the plaintiff loses a bench trial and argues that he was entitled to a jury trial; his appeal is not moot even if the appellate court is confident that a jury would have come to the same conclusion as the trial judge.

So let us turn to the merits of the appeal, beginning with the due process issue. There is an initial question whether the plaintiff was deprived of "property" within the meaning of the due process clause when the City Council turned down its application for annexation and rezoning. Were the plaintiff complaining of being deprived of the 142 acres that it had contracted to buy, the complaint might fail, as in *Bryan v. City of Madison*, 213 F.3d 267, 274-76 (5th Cir. 2000), because a contract to buy something is not tantamount to ownership of the thing. But the plaintiff *was* deprived of a contract right, and so we must ask when does a contract right rise to the dignity of constitutional "property"? It is settled that the right not to be fired without cause—the right that employment contracts terminable before the expiration

of their term only for cause create—is constitutional property. *Board of Regents v. Roth*, 408 U.S. 564, 576-77 (1972). But the status of other contract rights (other than a contractual right merely to procedural protections, which has uniformly been held not to create constitutional property, *Campbell v. City of Champaign*, 940 F.2d 1111, 1113 (7th Cir. 1991), and cases cited there) is unsettled, though most cases to address the issue reject the position that all contract rights are constitutional property. *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 192-93 (7th Cir. 1996); *Bernard v. United Township High School Dist. No. 30*, 5 F.3d 1090, 1091, 1093 (7th Cir. 1993); *Linan-Faye Construction Co. v. Housing Authority of City of Camden*, 49 F.3d 915, 931-32 (3d Cir. 1995); *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 31 (2d Cir. 1994); *San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino*, 825 F.2d 1404, 1407-10 (9th Cir. 1987); but see *General Electric Co. v. New York State Dept. of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991). These cases reflect a natural reluctance to port the entire body of disputes arising from the public contracts of the states to federal court. The difficult question is where within the universe of such contracts to draw the line. *Mid-American Waste Systems, Inc. v. City of Gary*, 49 F.3d 286, 289-92 (7th Cir. 1995).

As an original matter, one might suppose "property" limited to interests that the law protects by means of injunctions or criminal prosecutions, and of course the normal remedy for a breach of contract is merely an award of damages. The contract promisor is free to walk away from his contract, leaving the promisee with merely a money claim; but he is not free to steal the promisee's vase and say, it's mine for keeps but you can sue me for the dollar value of it. The *Roth* line of cases is based, however, on the idea of the "new property"—that in a modern society a person's principal assets are intangible and that one of the most valuable of these is the job security conferred by a contract

of employment terminable (before its term is up) only for cause. At the opposite extreme would be a contract that had merely granted the plaintiff an option—a right to assert a right and thus, it might be thought, an interest so tenuous as to be remote from property that one clings to because it is valuable or one is committed. In *Pro-Eco, Inc. v. Board of Commissioners*, 57 F.3d 505, 512-13 (7th Cir. 1995), we left open the question whether an option is constitutional property.

The plaintiff's contract to buy the 142 acres was not an option; the plaintiff was committed, provided only that the City Council came through. If having signed the contract the plaintiff decided not to seek the Council's approval, that would not have entitled it to repudiate the contract. Still, the purely commercial interest of which the plaintiff was deprived doesn't seem to be the kind of contractual interest that the values that inform the concept of due process require to be classified as property.

The question when contracts with a state agency create constitutional property is less momentous than might appear. All states provide judicial remedies for breach of contract and these remedies will almost always provide all the process that is constitutionally due, making the question whether the contract right was also a property right academic. Not in this case, because the state actor (the City Council) is accused of interfering with a contract rather than breaking one of its own contracts. Nevertheless, there is no need to decide whether the plaintiff was deprived of a property right by the Council's action, because there was no denial of due process.

When zoning decisions are confided to a legislative rather than a judicial body (the City Council of Greenwood is the former), the affected persons have no right to notice and an opportunity for a hearing: no right, in other words, to procedural due process. *City of Eastlake v. Forest City*

*Enterprises, Inc.*, 426 U.S. 668, 672-77 (1976); *Bi-Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915); *Pro-Eco, Inc. v. Board of Commissioners*, *supra*, 57 F.3d at 513; *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166-67 (7th Cir. 1994); *Dawson v. Milwaukee Housing Authority*, 930 F.2d 1283, 1286 (7th Cir. 1991); *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468-69 (7th Cir. 1988). But legal principles generally and perhaps in this instance as well are limited by their rationales. An important reason for not requiring notice and an opportunity for a hearing when legislative action is at issue is that legislation normally is general in its scope rather than targeted on a specific individual, and its generality provides a safeguard that is a substitute for procedural protections. The greater the number of people burdened by a proposed law, the easier it is to mobilize political resistance, and the likelier moreover that the burdened class includes constituents of the legislators proposing to impose the burden. If a legislature can focus burdens laser-like on a hapless individual, he has no political remedy, while if it has to place an equal burden on many others he has a political remedy in concert with the others. This is the essential insight behind the equal protection clause. *Club Misty, Inc. v. Laski*, 208 F.3d 615, 620 (7th Cir. 2000).

But as our cases recognize, the tinier the burdened group—and here it is a single firm, though this is a little misleading because the firm has employees, shareholders, suppliers, and customers all of whom may be adversely affected by the denial of the land-use changes that it sought—the weaker is the equal-burden rationale for denying procedural rights in legislative hearings and the stronger therefore is the case for granting such rights in the name of due process. *Pro-Eco, Inc. v. Board of Commissioners*, *supra*, 57 F.3d at 513; *Coniston Corp. v. Village of Hoffman Estates*, *supra*, 844 F.2d at 469; *Philly's v. Byrne*, 732 F.2d 87, 92-93 (7th Cir. 1984). How

much stronger we needn't decide in this case. The plaintiff had ample notice of the City Council's consideration of its application, and two hearings at which to present its case (the first and the third: the second hearing was a public debate in the Council on the validity of the two-thirds provision in the ordinance, but the public was not permitted to participate in the debate). True, the plaintiff may not have known—this is a disputed matter—that the two-thirds requirement would be sprung on it. But the validity of the requirement was not an issue going to the merits of the application. It was merely an internal procedural rule, and it seems to us—we cannot find a case on the point—that due process does not require a judicial or legislative body to disclose its rules for voting, as long as those rules don't themselves violate due process. No doubt the more a party knows about his tribunal the better able he is to present his case, but we cannot find a stopping point to the principle that the plaintiff is urging—must the Supreme Court disclose that it takes only four votes to grant certiorari, and must this court disclose the identity of the members of its panels before the day of argument?

But due process has long been understood to have a sub-stantive as well as a procedural dimension. A legal rule that deprives a person of property has to be rational. *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997); *Martinez v. California*, 444 U.S. 277, 281-83 (1980); *Vlandis v. Kline*, 412 U.S. 441, 446 (1973); *Nectow v. City of Cambridge*, 277 U.S. 183, 188 (1928); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 394-95 (1926); *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). Maybe in some circumstances supermajority requirements would be irrational—though because they favor the status quo such requirements tend rather to protect than to impair property. However that may be, the plaintiff has not shown that requiring a two-thirds vote by the Greenwood City Council to reject a recommendation of its Plan Commission

is irrational. The City might rationally desire to accord some deference to the recommendations of the body that specializes in zoning matters. But since the City Council is not an adjudicative body and as far as we know has no lawyers among its members, the usual device for assuring deference to the first-line decisionmaker—the adoption of a deferential standard of review, such as clear error or abuse of discretion or substantial evidence—would not be feasible and a simple alternative is to require that the Plan Commission can be overridden only by a supermajority vote.

What is true is that the two-thirds requirement may have violated state law, though we are less confident of that than either the plaintiff or the Greenwood City Attorney is. The statutes that we quoted earlier require at least a majority vote unless another statute requires more. But it is easier to see why the state legislature would want to prevent city councils from adopting ordinances by a vote of less than a majority of the members than why it would impose a flat prohibition on a council's adopting a supermajority requirement for particular types of vote. The Indiana Supreme Court has never spoken to the question, and the decisions by the intermediate appellate courts of the state that the plaintiff cites in support of the City Attorney's position, *City of Evansville v. Fehrenbacher*, 517 N.E.2d 111 (Ind. App. 1987); *Smith v. City of Shelbyville*, 462 N.E.2d 1052 (Ind. App. 1984), are not in point.

In any event an error of state law is not a violation of due process. *Gryger v. Burke*, 334 U.S. 728, 731 (1948); *Pro-Eco, Inc. v. Board of Commissioners*, *supra*, 57 F.3d at 514. The plaintiff acknowledges this but argues that a state's failure to provide an avenue of judicial review of such an error is a denial of due process. There are indeed situations in which the hearing that is required to be offered a person before he can be deprived of life, liberty, or property consistently with

due process must have a judicial component. A person could not lawfully be executed on the basis of an administrative hearing with no right of judicial review. Cf. *Zadvydas v. Davis*, 533 U.S. 678, 690-92 (2001); *Ng Fung Ho v. White*, 259 U.S. 276, 284-85 (1922). It is exceedingly doubtful that the principle generalizes to a zoning decision, but even if it does, the plaintiff acknowledges as it must that it could have asked an Indiana state court for a declaration that the two-thirds requirement was void by virtue of the statutes we've quoted. Ind. Code § 34-14-1-2. This is true even though the part of the ordinance that the plaintiff objected to had been repealed, since the plaintiff's right to develop the 142 acres depended on whether the two-thirds requirement had been lawful when applied. *Ashness v. Tomasetti*, 643 A.2d 802, 808 (R.I. 1994), overruled on other grounds in *Kildeer Realty v. Brewster Realty Corp.*, 826 A.2d 961 (R.I. 2003); *Mullendore v. School Dist. No. 1*, 388 N.W.2d 93, 96, 99-100 (Neb. 1986) (per curiam); *Shelton v. Reeder*, 121 So. 2d 145, 149-50 (Fla. 1960).

The plaintiff argues that declaratory relief wouldn't have been adequate because such relief wouldn't have given it any damages or come in time to prevent its land contract from lapsing. The plaintiff could however have sought accelerated consideration by the court that it asked for a declaration. Ind. Tr. Pro. R. 57. Its failure to seek judicial relief leaves us without any basis for thinking that the declaratory-judgment remedy is in fact inadequate in a case like this to preserve a right to judicial correction of an error of state law.

The last question presented by the appeal is whether the plaintiff has mounted a strong enough "class of one" equal protection case to withstand summary judgment. In the usual equal protection case the plaintiff is complaining about discrimination against a group to which he belongs, such as

a racial minority. But *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), confirming earlier decisions by this court (including the decision that the Supreme Court was reviewing), holds that an individual who does not claim membership in any group narrower than the human race can still obtain a remedy under the equal protection clause for "irrational and wholly arbitrary" treatment. *Id.* at 565. We held in *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000), "that to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." See also *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *Cruz v. Town of Cicero*, 275 F.3d 579, 587 (7th Cir. 2001); *Bell v. Duperrault*, 367 F.3d 703, 709-13 (7th Cir. 2004) (concurring opinion). The only evidence presented in this case that might satisfy this demanding test is the City Council's action in abrogating the two-thirds rule in favor of a simple majority immediately after reaffirming its rejection of the plaintiff's application that had garnered a simple majority at the previous meeting. That is not enough evidence to indicate that the Council was impelled by ill will or exploitative or otherwise illegitimate motives. All the Council was doing was refusing to make its new rule, that of a simple majority, retroactive.

Nor can vindictiveness or other impropriety be inferred from the act of the Council member at the first meeting in dredging up what may have been the largely forgotten or ignored two-thirds ordinance. The plaintiff points out that three years earlier the Council had rejected a recommendation of the Plan Commission by a 4-3 vote and no one had brought up the two-thirds ordinance. But there is nothing suspicious about a loser's looking for a legal basis for invalidating the vote that he (in this case she) lost. Nothing, in

short, to distinguish this case from any other zoning dispute in which the proponent of a zoning change loses. See *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 831-34 (1st Cir. 1982).

It is true that in two cases decided after *Hilton*, *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002), and *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001), panels of this court stated, without reference to *Hilton*, that as an alternative to the standard laid down in that case a class-of-one case could be proved simply by showing that the defendant had intentionally treated the plaintiff differently from others similarly situated and had had no rational basis for doing so. There is tension between these cases and *Hilton* (and cases in other circuits that are like *Hilton*), *Bell v. Duperrault*, *supra*, 367 F.3d at 711 (concurring opinion), but this is not the case in which to try to resolve it. There was a rational ground for applying the ordinance to an existing recommendation of the Plan Commission but not to future recommendations; it is the rationality of declining to apply new rules retroactively.

AFFIRMED.

RIPPLE, *Circuit Judge*, concurring. I join the judgment of the court and the majority opinion with the exception of the dicta in the last paragraph that suggests, quite gratuitously, that a tension exists between this court's opinion in *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000), and its opinions in *Nevel v. Village of Schaumburg*, 297 F.3d 673 (7th Cir. 2002), and *Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001).

The majority opinion implies that *Hilton*, requiring proof of animus toward the plaintiff (rather than simple proof that the defendant *intentionally* treated the plaintiff differently from others similarly situated without rational basis for doing so), is the stronger "class of one" analysis. However, in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), the Supreme Court stated: "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564 (citing cases). *Nevel* and *Albiero* track explicitly the Supreme Court's holding and are wholly consistent with its rationale. Notably, the Supreme Court explicitly declined to address the "alternative theory of 'subjective ill will' " that the majority now implies is the correct rule. *Id.* at 565.

By incorporating the language of *Village of Willowbrook*, *Nevel* and *Albiero* provide a sound framework that is entirely faithful to the controlling precedent of the Supreme Court. Moreover, in *Albiero*, the court, citing cases older than *Hilton*, further acknowledged that our circuit has permitted a cause of action to stand when the plaintiff alleges that ill will caused the unequal treatment of individuals who are prima facie identical. *See Albiero*, 246 F.3d at 932. This approach, characterized as an alternate theory by the Supreme Court in *Village of Willowbrook*, has yet to receive the Supreme Court's blessing.[1] Indeed, in the final analysis, this latter formulation

---

[1] "These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. We therefore affirm the judgment of the Court of Appeals, but do not reach the alternative theory of 'subjective ill will' relied on by that court." *Village of*

(continued...)

may be simply a salutary method of establishing proof of discriminatory intent, an established prerequisite of an equal protection violation. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 n.3 (7th Cir. 2004). Thus, the suggestion of "tension," along with the suggestion that *Nevel* and *Albiero* deviate from established national law, is unnecessary and inaccurate.

In all other respects, I am pleased to join the judgment and opinion of the court.

A true Copy:

   Teste:

           _____
           *Clerk of the United States Court of*
            *Appeals for the Seventh Circuit*

---

[1]  (...continued)
*Willowbrook v. Olech*, 528 U.S. 562, 565 (2000); *see Bell v. Duperrault*, 367 F.3d 703, 711 (7th Cir. 2004) (Posner, J., concurring) (acknowledging that, given the Supreme Court's holding in *Village of Willowbrook*, insistence on subjective ill will as the free-standing test "may be fighting a doomed rearguard action").